Emma Bruden, OSB #163525
Kampmeier & Knutsen PLLC
1300 SE Stark Street, Suite 202
Portland, Oregon 97214
Telephone: (503) 719-5641
Email: emma@kampmeierknutsen.com

Jonah Sandford, OSB # 154711
Northwest Environmental Defense Center
10101 S. Terwilliger Blvd.
Portland, Oregon 97219
Telephone: (503)-768-6726
Email: jonah@nedc.org

*Attorneys for Plaintiff Northwest Environmental Defense Center*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| NORTHWEST ENVIRONMENTAL DEFENSE CENTER, an Oregon non-profit corporation, | Case No. 3:23-cv-01339 |
| Plaintiff, | COMPLAINT |
| v. | |
| JOPP ENERGY COMPANY, a Washington corporation, | |
| Defendant. | |

## I.    INTRODUCTION.

1.    This action is a citizen suit alleging violations of the federal Clean Water Act

("CWA" or "Act") as amended, 33 U.S.C. § 1251 *et seq*. Plaintiff Northwest Environmental

Defense Center ("NEDC") alleges Defendant Jopp Energy Company ("Jopp" or "Defendant")

operates an industrial facility on or near 10300 North Lombard Street, Portland, Oregon 97203

("Facility"). Jopp is in ongoing violation of the terms and conditions of its National Pollutant

Discharge Elimination System ("NPDES") Permit, which authorizes discharges of pollutants and

stormwater associated with industrial activity from Defendant's facility in Portland, Oregon to

waters of the United States, provided Jopp and the discharges comply with the terms and

conditions of the permit. NEDC seeks declaratory and injunctive relief, the imposition of civil

penalties, an award of costs, attorneys' fees, and expert witness fees, and other relief for

Defendant's repeated and ongoing violations of its NPDES permit and the Act.

## II.    JURISDICTION AND VENUE.

2.      The Court has jurisdiction pursuant to 33 U.S.C. § 1365 (CWA citizen suit

provision) and 28 U.S.C. § 1331 (federal question). Jopp is in violation of an "effluent standard

or limitation" as defined by Section 505 of the CWA, 33 U.S.C. § 1365. The relief requested

herein is authorized by 33 U.S.C. §§ 1319(d) and 1365.

3.      NEDC has satisfied the jurisdictional requirements for bringing this suit. By

certified letter dated and postmarked April 28, 2023, NEDC notified Jopp and its registered agent

of Defendant's alleged violations of its NPDES permit and the CWA and of NEDC's intent to

sue for those violations ("Notice Letter"). The certified letter dated and postmarked April 28,

2023 was mailed to Jopp's address listed with the Oregon Secretary of State which is the Facility

address, and to Jopp's address listed with the Washington Secretary of State. The Notice Letter

to Jopp and its registered agent served on April 28, 2023 were returned to the sender. On June 5,

2023, the Notice Letter was delivered via personal service at the Facility on Zach Pollard,

Managing Agent of Jopp. By certified mail, return receipt requested and postmarked June 6,

2023, NEDC served another copy of the Notice Letter on Defendant at the Facility address,

COMPLAINT - 2

which was returned to sender. On June 7, 2023, the Notice Letter was delivered via personal service at 2509 142nd Avenue Southwest, Lakebay, Washington, on Teresa Neuman, Managing Agent. By certified mail, return receipt requested and postmarked June 12, 2023, NEDC served the Notice Letter on Defendant and Defendant's registered agent at Jopp's Gig Harbor address and Jopp's P.O. Box in Vaughn, Washington, both of which are addresses listed on Jopp's website. The aforementioned efforts were in accordance with Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A). In addition, in accordance with Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), on April 28, 2023, NEDC sent copies of the Notice Letter to the Administrator of the U.S. Environmental Protection Agency ("EPA"), the Administrator of EPA Region 10, and the Director of the Oregon Department of Environmental Quality ("ODEQ") by mailing copies of the Notice Letter to those individuals via certified mail, return receipt requested. Copies of the Notice Letter with Certificates of Service for the April 28, 2023 and June 12, 2023 mailings are attached to this Complaint as Exhibit 1 and Exhibit 2, respectively, and the allegations in the Notice Letter are hereby incorporated by reference. Copies of the declarations of service for the June 5, 2023 and June 7, 2023 personal service are attached hereto as Exhibit 3 and Exhibit 4, respectively.

4.      More than sixty days have passed since NEDC served the Notice Letter and the violations complained of are continuing or reasonably likely to continue to occur. Neither the EPA nor the ODEQ has commenced any action constituting diligent prosecution to redress the CWA violations alleged herein. Defendant is in ongoing violation of the Clean Water Act.

5.      The source of the violations complained of in the Notice Letter is located in Multnomah County, Oregon, and venue is therefore appropriate in the District of Oregon under Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1).

Kampmeier & Knutsen PLLC
1300 SE Stark Street, Suite 202
Portland, Oregon 97214
(503) 719-5641

6.      A copy of this Complaint will be served on the Attorney General of the United

States, the Administrator of the EPA, and the Administrator of EPA Region 10, as required by 33

U.S.C. § 1365(c)(3) and 40 C.F.R. § 135.4.

### III.    PARTIES.

7.      Plaintiff Northwest Environmental Defense Center is a membership organization

suing on behalf of itself and its members. NEDC is an independent non-profit corporation

organized and existing under the laws of the State of Oregon. NEDC maintains its principal place

of business in Multnomah County, Oregon. Since 1969, the staff, student volunteers, and

members of NEDC have advocated for cleaner water and air and for the preservation of public

lands and wildlife habitat across the Pacific Northwest.

8.      The mission of NEDC is to preserve and protect the natural environment of the

Pacific Northwest. NEDC and its members have a particular interest in, and derive aesthetic,

recreational, and other benefits from, Oregon's rivers, streams, lakes, and bays, including the

Willamette River—the receiving water for Defendant's stormwater discharges—and its

associated lakes and wetlands and waters downstream of those waters, as well as the aquatic

species that use and rely on those waters. NEDC and its members also work to conserve and

protect Oregon's water resources and aquatic species. NEDC's members use waters, including

the Willamette River and the Columbia River, and adjacent lands downstream from Defendant's

discharges for recreational and other activities, including boating, fishing, nature watching,

hiking, biking, and aesthetic enjoyment. Additionally, many members of NEDC live or work

near Oregon waters, the Willamette River or the Columbia River and its associated lakes and

wetlands, or otherwise have an interest in these waters. NEDC and its members intend to

continue all of these activities in the future.

COMPLAINT - 4

9.     NEDC has representational standing to bring this lawsuit. NEDC and its members are "citizens" as defined by Section 505(g) of the Act, 33 U.S.C. § 1365(g). NEDC has at least one member who is injured by Defendant's discharges of pollutants or industrial stormwater and by Jopp's failure to comply with its NPDES permit and the CWA. Recreational, economic, aesthetic, conservation, health, and/or other interests of NEDC and its members have been, are being, and will be adversely affected by Defendant's violations of the CWA and NPDES permit and unauthorized discharges of pollutants and/or industrial stormwater to the Willamette River. Several of NEDC's members recreate on or near the Willamette and Columbia Rivers in the vicinity and downstream of Jopp's Facility. These members enjoy canoeing, kayaking, hiking, wildlife observation, photography, and other recreational pursuits on and near the Willamette and Columbia Rivers in the vicinity and downstream of Jopp's Facility. These members suffer cognizable injuries as a result of the Clean Water Act violations alleged herein. For example, they suffer diminished enjoyment of their recreational experiences due to the knowledge that Jopp's polluted stormwater is or may be adversely affecting water quality and animal species that rely on that water. NEDC's and its members' interests in the Willamette River and waters downstream are diminished by their polluted state, by Defendant's illegal discharges of pollutants and industrial stormwater, and by Defendant's other NPDES permit violations. These injuries are fairly traceable to the conduct challenged herein. The relief sought in this lawsuit can redress the injuries to those interests.

10.    NEDC has organizational standing to bring this action. NEDC has been actively engaged in a variety of advocacy efforts to improve water quality in, and to address sources of water quality degradation to, the Willamette River. NEDC's organizational interests have been adversely affected by Defendant's NPDES permit violations. Defendant has failed to fulfill the

COMPLAINT - 5

Kampmeier & Knutsen PLLC
1300 SE Stark Street, Suite 202
Portland, Oregon 97214
(503) 719-5641

monitoring, recordkeeping, reporting, planning, and other obligations necessary for compliance with its NPDES permit and the CWA. As a result, NEDC is deprived of information that would further its efforts to serve its members by disseminating information and taking appropriate action to improve water quality in the Willamette River. NEDC's efforts to educate and advocate for greater environmental protection for the benefit of its members are thereby obstructed. These injuries are fairly traceable to Defendant's violations and are redressable by this Court.

11.    Defendant Jopp Energy Company is a corporation organized and existing under the laws of the state of Washington. Jopp operates a recycling facility located at or near 10300 North Lombard Street, Portland, Oregon 97203. Defendant's Facility discharges pollutants and stormwater associated with industrial activity via point sources to the Willamette River.

## IV.    LEGAL BACKGROUND.

12.    Congress enacted the Clean Water Act to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a).

13.    As relevant here, Section 301(a) of the Act, 33 U.S.C. § 1311(a), prohibits "the discharge of any pollutant by any person" unless such discharge is authorized by an NPDES permit issued pursuant to Section 402 of the Act, 33 U.S.C. § 1342.

14.    The Act defines the term "discharge of a pollutant" to mean, in part, "any addition of any pollutant to navigable waters from any point source...." 33 U.S.C. § 1362(12).

15.    The Act defines the term "point source" to mean, in part, "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged." *Id.* § 1362(14).

Kampmeier & Knutsen PLLC
1300 SE Stark Street, Suite 202
Portland, Oregon 97214
(503) 719-5641

16.     The Act defines the term "pollutant" to mean, in part, "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water." *Id.* § 1362(6).

17.     Although neither the Act nor its implementing regulations define the term "addition," courts have found that "addition" means the introduction of a pollutant into navigable waters from any place outside the particular water body. *See, e.g.*, *Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of New York*, 273 F.3d 481, 491 (2d Cir. 2001).

18.     The Act's prohibition on discharging pollutants from point sources applies broadly. The Act defines the term "navigable waters" to mean "the waters of the United States, including the territorial seas." 33 U.S.C. § 1362(7). And the Act defines the term "person" to mean "an individual, corporation, partnership, association, State, municipality, commission, or political subdivision of a State, or any interstate body." *Id.* § 1362(5).

19.     The Act regulates and requires an NPDES permit for stormwater discharges "associated with industrial activity." 33 U.S.C. § 1342(p)(2)(B), (p)(3)(A). EPA regulations define the term "stormwater discharge associated with industrial activity" in part to mean "the discharge from any conveyance that is used for collecting and conveying storm water and that is directly related to manufacturing, processing or raw materials storage areas at an industrial plant." 40 C.F.R. § 122.26(b)(14).

20.     Federal and state regulations require any person who discharges or proposes to discharge pollutants or stormwater associated with industrial activity to waters of the United States to apply for an NPDES permit. 40 C.F.R. § 122.21(a); Oregon Administrative Rules ("OAR") 340-045-0015(2) & (5). EPA may delegate administration of the NPDES permit

COMPLAINT - 7

program to states with regulatory programs meeting applicable criteria. *Id.* § 1342(b); 40 C.F.R. Part 123. The State of Oregon has established a federally-approved NPDES program administered by the ODEQ. *See* OAR ch. 340-045. Accordingly, the ODEQ may issue NPDES permits authorizing discharges of pollutants and industrial stormwater.

21.     Compliance with the terms and conditions of an NPDES permit is deemed compliance with the general discharge prohibition in Section 301(a). 33 U.S.C. § 1342(k). Any permit noncompliance is grounds for a citizen enforcement action. *Id.* §§ 1365(a)(1), (f)(7).

## V.     FACTS.

### A.     Oregon's General NPDES Stormwater Discharge Permit Number 1200-Z and Defendant's NPDES Permit Coverage.

22.     ODEQ issues general and individual NPDES permits authorizing discharges of pollutants in the State of Oregon. A person seeking coverage under one of ODEQ's general permits must submit certain application materials to ODEQ, which then assigns NPDES permit coverage to the discharger if appropriate.

23.     ODEQ periodically issues a general NPDES permit authorizing discharges of stormwater associated with industrial activity in Oregon. ODEQ's current General Stormwater Discharge Permit Number 1200-Z ("1200-Z Permit") authorizes discharges of industrial stormwater from certain facilities, provided the permittee and discharges are in compliance with the terms and conditions of the 1200–Z Permit. Once a facility obtains NPDES permit coverage under the 1200-Z Permit, a violation of the permit or any condition thereof is subject to citizen suit enforcement. 33 U.S.C. §§ 1365(a)(1), (f)(7).

24.     To reduce and eliminate pollutant concentrations in stormwater discharges, the 1200-Z Permit requires permittees to develop and implement a Stormwater Pollution Control Plan ("SWPCP"); to monitor and report pollutant loadings in stormwater discharged from the

Kampmeier & Knutsen PLLC
1300 SE Stark Street, Suite 202
Portland, Oregon 97214
(503) 719-5641

facility; and, in certain circumstances, to revise the SWPCP and implement more comprehensive stormwater management practices over time to protect water quality.

25.    ODEQ issued one iteration of the 1200-Z Permit that became effective on August 1, 2017, which permit ODEQ reissued upon reconsideration on October 23, 2018 ("2017 Permit"). For facilities granted coverage under it, the 2017 Permit conditionally authorized stormwater discharges associated with industrial activity, as well as some non-stormwater discharges of pollutants, from August 1, 2017 until the next permit iteration.

26.    ODEQ issued the most recent iteration of the 1200-Z Permit, which became effective on July 1, 2021, was modified on August 17, 2022, and is set to expire June 30, 2026 ("2021 Permit"). The 2021 Permit and the 2017 Permit (together "the Permits") are substantially similar, and NEDC alleges ongoing violations of the CWA that began during coverage under the 2017 Permit and are continuing through the present under the 2021 Permit. The specific terms and conditions of the Permits at issue in this case are described in detail below and in the Notice Letter. *See* Ex. 1.

27.    Defendant's Facility discharges stormwater associated with industrial activity and other pollutants via a point source conveyance to the Willamette River.

28.    ODEQ authorized Defendant to discharge stormwater associated with industrial activity from the Facility beginning June 12, 2019, by issuing Defendant coverage under the 2017 Permit. ODEQ assigned Defendant file number 126334. On March 31, 2021, ODEQ authorized Defendant to discharge stormwater associated with industrial activity under the 2021 Permit upon its effect under the same file number. Defendant's Permits require Defendant to monitor stormwater discharges from the Facility. The stormwater monitoring data described in

COMPLAINT - 9

Tables 1 and 2 of the Notice Letter accurately reflect stormwater monitoring results Defendant submitted to ODEQ and/or the City of Portland's Bureau of Environmental Services ("BES").

29.     Defendant's Permits prohibit any direct or indirect discharge to waters of the state that is not in compliance with the terms and conditions of the permit. Defendant's Permits also clearly state: "Any noncompliance with any of the requirements of this permit constitutes a violation of the Clean Water Act," and "[f]ailure to comply with any permit condition . . . is grounds for enforcement action . . . ." 2021 Permit, Schedule A.14.a; 2017 Permit, Schedule A.12.a; Permits, Schedules F.A1.

**B.      Jopp Has Violated and Is Violating the Permits.**

30.     Defendant is discharging pollutants and stormwater associated with industrial activity from the Jopp Facility to the Willamette River, in violation of the terms and conditions of the Permits. Defendant's violations of the Permits and the CWA are set forth in Section II of the Notice Letter and are hereby incorporated by reference. Jopp's violations of the Permits constitute violations of an "effluent standard or limitation" under the CWA. 33 U.S.C. § 1365(a), (f)(7).

**1.      Jopp Violated the Permits by Failing to Comply with the Permits' Narrative, Technology-Based Effluent Limits and the Control Measures Required to Meet Those Limits.**

31.     Schedules A.1 of the Permits require Jopp to implement the listed narrative, technology-based effluent limits—a variety of best management practices listed in the Permits— to reduce pollutants in stormwater discharged from the Facility. Additionally, Schedule A.2.a of the 2021 Permit (Schedule A.3.a of the 2017 Permit) requires Jopp to "select, design, install, implement and maintain control measures" to meet the narrative and numeric technology based effluent limits in Schedules A.1, B.1, and E of the Permits and to "describe these measures . . . in

COMPLAINT - 10

the SWPCP." And Schedule A.2.b of the 2021 Permit (Schedule A.3.b of the 2017 Permit)

requires Jopp to "reduce or eliminate pollutants to the extent achievable using control measures

that are technologically available and economically practicable and achievable in light of best

industry practice."

32.     Jopp violated and continues to violate Schedules A.1, A.2.a, and A.2.b of the

2021 Permit (Schedules A.1, A.3.a, and A.3.b of the 2017 Permit) by failing to meet the

narrative technology-based effluent limits in Schedules A.1 of the Permits; by failing to select,

design, install, implement, and maintain control measures to ensure compliance with the

technology-based effluent limits in Schedules A.1 of the Permits; and by failing to reduce or

eliminate pollutants to the extent achievable using control measures that are technologically

available and economically practicable and achievable in light of best industry practice.

33.     Several specific instances of Jopp's violations of Schedules A.1, A.2.a, and A.2.b

of the 2021 Permit (Schedules A.1, A.3.a, and A.3.b of the 2017 Permit) have been documented

by BES staff during Facility inspections. Jopp violated these conditions on August 6, 2020 when

the Facility had an uncovered recycling bin without a lid, as well as a Diesel Exhaust Fluid tank

and additional drums that were not stored within secondary confinement. Jopp violated each of

these permit conditions on December 17, 2021, when the Facility had heavy accumulation of

sediment, sawdust, and debris on pavement coming from overflow stockpiles in Drainage

Basin 2 ("DB-2"), with stormwater then carrying the sediment debris off-site. Jopp violated each

of these permit conditions on February 9, 2023, when the Facility had stockpiles of sawdust

extending over the boundary of Drainage Basin 1 ("DB-1"), with erosion from those stockpiles

running off downslope onto the Port of Portland's property. On the same date, heavy sawdust

accumulated on the adjacent Port of Portland road. On March 9, 2023, Jopp violated these permit

COMPLAINT - 11

conditions because Jopp's woodchipper produced heavy dust particles that were blowing onto the Port of Portland's road and the surrounding area.

34.     On each of these days, Jopp was in violation of Schedules A.1, A.2.a, and A.2.b of the 2021 Permit (Schedules A.1, A.3.a, and A.3.b of the 2017 Permit) because on each of these days, Jopp failed to comply with the permit's narrative technology-based effluent limits, which require Jopp to eliminate or minimize exposure of pollutants to stormwater, require Jopp to cover all waste contained in bins or dumpsters, require Jopp to store all hazardous substances and/or petroleum/oil liquids within berms or secondary containment devices, require Jopp to minimize generation of dust, off-site tracking and discharge of soil particulates and raw or final or waste materials, and require Jopp to stabilize exposed areas to minimize erosion of soil at the site and sedimentation. Jopp violated these same permit requirements each and every other day since June 12, 2019 when Jopp left waste or garbage uncovered; when Jopp failed to store DEF tanks and other drums within secondary containment; when Jopp allowed accumulation of sediment, sawdust, and debris on the pavement at the Facility; when Jopp failed to contain runoff using controls to minimize erosion of soil at the site or when Jopp failed to minimize generation of dust at the Facility. These and other documented violations are described in Section II.A.1 of the Notice Letter and are incorporated herein by this reference. These violations are ongoing or reasonably likely to recur.

35.     Jopp's violations of Schedules A.1, A.2.a, and A.2.b of the 2021 Permit (Schedules A.1, A.3.a, and A.3.b of the 2017 Permit) are also demonstrated by the fact that Defendant's stormwater discharges regularly exceed the Permits' numeric benchmarks for several pollutants. Schedule A.5.a–b of the 2021 Permit explains that benchmarks are screening concentrations, exceedances of which require the permittee to assess "whether site controls are

Kampmeier & Knutsen PLLC
1300 SE Stark Street, Suite 202
Portland, Oregon 97214
(503) 719-5641

effectively reducing pollutant concentrations in stormwater discharges." *See also* 2017 Permit, Schedule A.9 (explaining benchmarks "are designed to assist the permit registrant in determining whether its site controls are effectively reducing pollutant concentrations in stormwater discharged from the site"). Schedule B.2 of the 2021 Permit requires Jopp to monitor stormwater discharges to determine whether the discharges exceed any of the following statewide benchmarks: total copper 0.015 mg/L; total lead 0.24 mg/L; total zinc 0.24 mg/L; pH 5.5-9.0 S.U.; and total suspended solids 30 mg/L. Schedule A.9 of the 2017 Permit established the following statewide benchmarks applicable to Jopp: total copper 0.020 mg/L; total lead 0.040 mg/L; total zinc 0.12 mg/L; pH 5.5-9.0 S.U.; and total suspended solids 30 mg/L.

36.     Additionally, Jopp discharges to a water body that is not meeting water quality standards for various pollutants, including iron, and Schedule B.4 of the 2021 Permit requires Jopp to monitor stormwater discharges from the Facility to determine whether the discharges exceed the impairment pollutant benchmark for iron of 10.0 mg/L. Schedule B.1.b of the 2017 Permit and ODEQ's permit assignment letter to Jopp required Jopp to monitor stormwater discharges from the Facility to determine whether the discharges exceed the impairment pollutant benchmark for iron of 1.0 mg/L.

37.     As indicated in Tables 1 and 2 below, stormwater discharges from the Facility have repeatedly exceeded the statewide and impairment pollutant benchmarks in the Permits and the Facility's assignment letter. The history and pattern of Jopp's stormwater sample results that have exceeded the statewide and impairment benchmarks for the Facility demonstrate that Jopp has regularly failed to comply with the narrative technology-based effluent limits in Schedules A.1 of the Permits; has regularly failed to select, design, install, implement, and maintain control measures necessary to meet those limits, in violation of Schedules A.2.a and A.2.b of the 2021

Kampmeier & Knutsen PLLC
1300 SE Stark Street, Suite 202
Portland, Oregon 97214
(503) 719-5641

Permit (Schedules A.3.a and A.3.b of the 2017 Permit); and that Jopp's Facility's site controls are not effectively eliminating or minimizing pollutants in stormwater discharged from the Facility, and are not reducing or eliminating pollutants to the extent achievable, in violation of Schedules A.1, A.2.a, and A.2.b of the 2021 Permit (Schedules A.1, A.3.a, and A.3.b of the 2017 Permit).

38.    These permit requirements and Defendant's violations thereof are described in Section II.A.2 of the Notice Letter and are incorporated herein by reference. These violations have occurred each and every day since June 12, 2019 and are ongoing or reasonably likely to recur.

| Table 1<br>Benchmark Exceedances<br>Reported by Jopp Energy Co.<br>Under the 2017 1200-Z Permit | | | | | | |
|---|---|---|---|---|---|---|
| Pollutant | Chemical Oxygen Demand | Total Suspended Solids | Copper, Total | Zinc, Total | Aluminum, Total | Iron, Total |
| **Permit Benchmarks** | **120 mg/L** | **30 mg/L** | **0.02 mg/L** | **0.12 mg/L** | **.75 mg/L** | **1 mg/L** |
| 12/11/20 | | 113 | | .122 | .977 | 2.75 |
| 12/20/20 | | 240 | | | | 1.21 |
| 02/01/21 | 124 | 64 | | | | 1.07 |
| 05/27/21 | 200 | 596 | .0336 | | 10.7 | 25.4 |

| Table 2<br>Benchmark Exceedances<br>Reported by Jopp Energy Co.<br>Under the 2021 1200-Z Permit | | | | | | |
|---|---|---|---|---|---|---|
| Pollutant | Chemical Oxygen Demand | Total Suspended Solids | Copper, Total | Zinc, Total | Aluminum, Total | Iron, Total |
| **Permit Benchmarks** | **120 mg/L** | **30 mg/L** | **0.015 mg/L** | **0.24 mg/L** | **1.10 mg/L** | **10 mg/L** |
| 12/15/21 | 153 | 302 | .0206 | | 3.31 | |
| 12/30/21 | 255 | 594 | .031 | .281 | 6.4 | 15.5 |
| 03/19/22 | | 128 | | | 1.78 | |
| 04/18/22 | | 102 | | | 2.52 | |
| 06/10/22 | | | .0488 | | | |
| 12/08/22 | | 132 | .0173 | | 6.75 | |
| 12/27/22 | | 129 | | | 4.71 | |
| 01/18/23 | | 122 | .0198 | | 9.01 | 18.4 |
| 03/10/23 | | 107 | .0199 | | 6.46 | 13.1 |

COMPLAINT - 14

**2.      Defendant Violated the Permits by Failing to Develop and Implement a SWPCP that Complies with all the Requirements of the Permits.**

39.      Schedule A.2.a of the 2021 Permit (Schedule A.3.a of the 2017 Permit) requires Jopp to describe its pollutant control measures, maintenance schedules, and the frequency of housekeeping measures in its SWPCP. Schedule A.8.c of the 2021 Permit (Schedule A.6.c of the 2017 Permit) requires Jopp to include in its SWPCP each narrative technology-based effluent limit to eliminate or reduce the potential to contaminate stormwater and prevent any violation of instream water quality standards. Schedule A.10 of the 2021 Permit (Schedule A.7 of the 2017 Permit) sets forth the requirements for SWPCPs, including in Schedule A.10.b.vi of the 2021 Permit (Schedule A.7.b.vi of the 2017 Permit) the requirement that SWPCPs include a description of control measures installed and implemented to meet the technology and water quality based requirements in Schedules A.1-A.4 and any applicable sector-specific requirements in Schedule E. Schedule A.8.d of the 2021 Permit (Schedule A.6.d of the 2017 Permit) then requires Jopp to implement the SWPCP and any revisions to it.

40.      BES staff has documented several instances where Jopp has violated the above-listed requirements of Schedule A.8.d of the 2021 Permit (Schedule A.6.d of the 2017 Permit). On August 6, 2020, Jopp violated Schedule A.6.d of the 2017 Permit by failing to implement specific site controls described in the April 2019 version of the SWPCP in at least the following ways: (1) Jopp was unable to provide documents indicating completion of employee training; (2) Jopp had not re-routed sheet flow by installing a berm and stormwater sump with a detention tank and stormwater discharge point, nor had it plugged Catch Basin 1; (3) the metal recycling bins were uncovered and without a lid; (4) metal recycling bins were located in DB-2, rather than DB-1 even though the SWPCP labels DB-2 as non-industrial; and (5) DEF tank and additional drums were not stored within secondary containment.

COMPLAINT - 15

41.     BES also documented several violations of Schedule A.8.d of the 2021 Permit on December 17, 2021 and again on January 26, 2022. On one or both of those dates, Jopp violated Schedule A.8.d of the 2021 Permit in at least the following ways: (1) Jopp failed to provide records to document completion of employee education, and Jopp acknowledged that employee education had not occurred in accordance with the SWPCP; (2) Jopp was using Drainage Basin 5 ("DB-5") for overflow stockpiles of ground pallets even though the November 2021 version of Jopp's SWPCP labels DB-5 as non-industrial; and (3) Jopp was using DB-5 to store railroad material even though the November 2021 version of Jopp's SWPCP labels DB-5 as non-industrial. Each of these failures to implement control measures or practices described in the SWPCP constitutes a violation of Schedule A.8 of the 2021 Permit (Schedule A.6 of the 2017 Permit).

42.     Jopp also violated and continues to violate these permit conditions by failing to maintain and implement an adequate SWPCP at the Facility. The benchmark exceedances documented in Tables 1 and 2, the water quality violations described herein, and ongoing discharges of polluted industrial stormwater from the Facility demonstrate that Jopp is not maintaining or implementing a SWPCP that includes adequate control measures and all of the required SWPCP components. Jopp has violated Schedules A.2.a, A.8.c, A.10, and A.8.d of the 2021 Permit (Schedules A.3.a, A.6.c, A.7, and A.6.d of the 2017 Permit) each and every day since June 12, 2019 by failing to maintain and implement an adequate SWPCP at the Facility.

43.     Finally, Jopp has violated Schedule A.2.f of the 2021 Permit, which states:

> If modifications to control measures are necessary to meet the technology-based effluent limits in this permit, the permit registrant must implement the modification before the next storm event if practicable or no later than 30 calendar days from discovering the violation unless DEQ or agent approve a later date.

COMPLAINT - 16

*See also* 2017 Permit Schedule A.3.f. Jopp has violated and is violating Schedule A.2.f of the 2021 Permit (Schedule A.3.f. of the 2017 Permit) by failing to take sufficient corrective actions, including revisions of its SWPCP and implementation of modified control measures, even though such corrective actions are necessary to meet the effluent limits of the Permits. These violations have occurred each and every day since June 12, 2019.

44.      These permit requirements and Defendant's violations thereof are described in Section II.B of the Notice Letter and are incorporated herein by reference. These violations are ongoing and reasonably likely to recur.

### 3.      Defendant Violated the Permits by Failing to Comply with the Permits' Tier I Corrective Action Requirements.

45.      Jopp violated the Permits by failing to comply with various requirements to undertake corrective action responses and submit corrective action reports. Schedule A.11 of the 2021 Permit (Schedules A.10.a and B.7.f.vi of the 2017 Permit) requires Jopp to undertake a Tier I corrective action response each time a stormwater monitoring result exceeds any statewide or sector-specific benchmark, or when visual observations show signs of pollution in the discharge. Specifically, the permit condition requires Jopp, within 30 days of obtaining monitoring results demonstrating a benchmark exceedance or completing a visual inspection showing signs of pollution in the discharge, to: (1) investigate the cause of the operations; (2) review the SWPCP and evaluate the selection, design, installation, and implementation of control measures to ensure compliance with the permit, including evaluating whether any previous pollutant source isolation actions are complete and whether additional modifications are necessary (3) evaluate treatment measures, and (4) assess and implement these corrective actions at all substantially similar discharge points. Schedule A.11.c.v of the 2021 Permit (Schedule A.10.a.iv of the 2017 Permit) requires a Tier I report to include (1) the results of the investigation into the cause of the elevated

COMPLAINT - 17

pollutant levels; (2) corrective actions taken or to be taken, or, if determined that no corrective action is necessary, the basis for this determination; and (3) documentation of whether SWPCP revisions are necessary. Schedule A.11.d.i of the 2021 Permit (Schedule A.10.b of the 2017 Permit) requires Jopp to implement necessary corrective actions before the next storm event, if possible, or no later than 30 days after receiving the monitoring results or completing the monthly visual inspection, whichever comes first.

46.     Jopp has routinely violated Schedules A.11.c. and A.11.d of the 2021 Permit (Schedules A.10.a and A.10.b of the 2017 Permit) by failing to complete a Tier I corrective action response, including a Tier I corrective action report, and/or by failing to perform an adequate corrective action response, including submitting inadequate Tier I corrective action reports, to bring the Facility into compliance with benchmark standards. Jopp failed to complete Tier 1 corrective action responses and reports in response to benchmark exceedances or visual observations showing signs of pollution. Jopp failed to complete an adequate Tier I corrective action response and Tier I report within 30 days following receipt of laboratory results for samples collected on December 11, 2020, December 30, 2020, February 1, 2021, May 27, 2021, and December, 15, 2021, despite multiple benchmark exceedances on each of these dates. Each of these instances was a violation of Schedules A.10.a and A.10.b of the 2017 Permit (Schedules A.11.c and A.11.d of the 2021 Permit). These violations occurred during the periods and in the manners stated in Section II.C of the Notice Letter and are hereby incorporated by reference. These violations are ongoing or reasonably likely to recur.

//

//

COMPLAINT - 18

4.      **Jopp Violated the Permits by Failing to Comply with the Permits' Inspection Requirements**.

47.      Schedule B.12 of the 2021 Permit (Schedule B.7.a of the 2017 Permit) requires Jopp to perform monthly inspections of "areas where industrial materials or activities are exposed to stormwater and areas where stormwater control measures, structures, catch basins, and treatment facilities are located." These inspections include "[v]isual observation for the presence of floating and suspended solids, color, odor, foam, visible oil sheen, or other obvious indicators of pollution in the stormwater discharge at all discharge point(s) . . . ." 2021 Permit, Schedule B.12; 2017 Permit, Schedule B.7.a. When these observations show evidence of such stormwater pollution, Jopp must complete a Tier I corrective action report. Schedule B.12.c of the 2021 Permit (2017 Permit Schedule B.7.c) requires these visual observations to "be conducted during a discharge event if one occurs during the month, regardless whether the monthly site inspection has already occurred." Inspections must include all discharge points. And Schedule B.12.i of the 2021 Permit and Schedule B.7.f of the 2017 Permit require Jopp to document all inspections in an inspection report that includes certain specific information and that is retained on site and submitted to ODEQ or BES upon request.

48.      Jopp has routinely violated these inspection requirements. For example, Jopp failed to perform any required monthly inspections through at least April 2022, and failed to document any inspections in an inspection report. As a result, Jopp violated Schedule B.12 of the 2021 Permit (Schedule B.7 of the 2017 Permit) each month from June 2019 through March 2022, and every other month where it failed to perform the required inspections and document those inspections in an inspection report. As another example, Jopp violated Schedule B.12 of the 2021 Permit in June 2022, September 2022, December 2022, and January 2023, because in each of those months Jopp conducted visual observations on days when there was no discharge

COMPLAINT - 19

occurring, in violation of Schedule B.12.c of the 2021 Permit. Each of these inspection

requirements and Defendant's violations thereof are described in Section II.D of the Notice

Letter and are hereby incorporated by reference. These violations are ongoing or reasonably

likely to recur.

>    **5.    Defendant Violated the Permits by Failing to Comply with the Permits'**
>    **Recordkeeping Requirements.**

49.    Schedule B.16 of the 2021 Permit (Schedule B.10 of the 2017 Permit) requires

that Jopp record and maintain certain information at the Facility, including per Schedule B.16.d

of the 2021 Permit (Schedule B.10 of the 2017 Permit) documentation of maintenance and

repairs of control measures and treatment systems and per Schedule B.16.g of the 2021 Permit

(Schedule B.10.f of the 2017 Permit) all inspection reports.

50.    Jopp regularly violates the requirements in Schedule B.16 of the 2021 Permit

(Schedule B.10 of the 2017 Permit). For example, on August 6, 2020 the Facility failed to record

and maintain stormwater records onsite, including records of preventative maintenance,

housekeeping, facility inspection, stormwater sampling results, and employee education records,

in violation of Schedule B.10.d of the 2017 Permit. Similarly, on January 26, 2022, the Facility

failed to record and maintain stormwater records onsite, including logs of preventative

maintenance, housekeeping, facility inspection, and employee education, a violation of Schedule

B.16 of the 2021 Permit. Jopp has violated Schedules B.12 and B.16 of the 2021 Permit

(Schedules B.7 and B10 of the 2017 Permit) on August 6, 2020 and January 6, 2022, and each

and every other day in which the documentation of employee education, maintenance and repairs

of control measures and treatment systems, or visual observations were not retained at the

Facility and available upon request. Each of these inspection requirements and Defendant's

COMPLAINT - 20

violations thereof are described in Section II.E of the Notice Letter and are hereby incorporated by reference. These violations are ongoing or reasonably likely to recur.

6.    **Defendant Violated the Permits by Failing to Comply with the Permits' Water Quality Based Effluent Limitations.**

51.    Schedule A.3.a of the 2021 Permit (Schedules A.4.a of the 2017 Permit) prohibits Jopp from causing or contributing to a violation of instream water quality standards as established in OAR 340-041. And Schedules F.A6 of the Permits require Jopp to comply with any applicable effluent standards or prohibitions established under OAR 340-041-0033 for toxic pollutants.

52.    OAR 340-041-007(1) states that "the highest and best practicable treatment and/or control of wastes, activities, and flows must in every case be provided so as to maintain . . . toxic materials . . . at the lowest possible levels." OAR 340-041-0033(1) prohibits the introduction of toxic substances above natural background levels in concentrations and/or combinations that may be harmful to public health, safety, aquatic life, and wildlife. And OAR 340-041-0033(2) states that levels of toxic substances in waters of the state may not exceed the applicable aquatic life criteria as defined in Table 30 under OAR 340-041-0083. ODEQ established these and other water quality standards to protect human health and other important beneficial uses such as recreation, drinking water sources, and habitat for salmon and steelhead. Or. Rev. Stat. §§ 468B.015, 468B.048.

53.    The Permits establish benchmark concentrations for the impairment pollutant iron based on these water quality standards, and also used these water quality standards to establish benchmark concentrations for other toxic pollutants including copper, zinc, and aluminum. Table 30 in OAR 340-041-8033 identifies the concentrations of toxic pollutants that may be harmful to aquatic life. In its permit assignment letters to Jopp, ODEQ incorporated the iron criterion in

COMPLAINT - 21

Table 30 into the Permits as the impairment benchmark concentration for iron, and used the copper, zinc, and aluminum criteria to establish benchmarks for those pollutants.

54.    Jopp has violated and continues to violate Schedules A.3.a and F.A6 of the 2021 Permit (Schedules A.4.a and F.A6 of the 2017 Permit) by discharging pollutants and industrial stormwater from the Facility in amounts or manners that cause or contribute to violations of the narrative and numeric water quality standards identified above. As indicated in Tables 1 and 2 above, discharges from the Facility routinely contain iron, copper, zinc, and aluminum in concentrations that exceed relevant benchmark concentrations. Jopp has violated and is violating Schedule F.A6 of the Permits by introducing iron, zinc, copper, and aluminum above natural background levels in concentrations that may be harmful to public health, safety, aquatic life, and wildlife (OAR 340-041-0033(1)). These violations have occurred each and every day since June 12, 2019 on which there was 0.1 inch or more of precipitation at the Facility and Jopp discharged industrial stormwater from the Facility that contained copper, zinc, iron, and/or aluminum in excess of the benchmark concentrations for those pollutants established in the Permits. Specific examples of those violations occurred on each of the following days when Jopp collected a sample of its discharge that exceeded one or more of the 2021 Permit's benchmarks for toxic pollutants: December 15, 2021, December 30, 2021, March 19, 2022, April 18, 2022, June 10, 2022, December 8, 2022, December 27, 2022, January 18, 2023, and March 10, 2023. These violations are ongoing or reasonably likely to recur.

55.    Jopp has violated and is violating Schedules F.A6 of the Permits by failing to provide the highest and best practicable treatment and/or control of wastes, activities, and flows so as to maintain the lowest possible levels of toxic pollutants. As indicated in Tables 1 and 2 above, discharges from the Facility regularly contain elevated concentrations of the toxic

COMPLAINT - 22

pollutants copper, zinc, iron, and aluminum. These violations have occurred each and every day since June 12, 2019 on which there was 0.1 inch or more of precipitation at the Facility and Jopp discharged industrial stormwater from the Facility that contained copper, zinc, iron, and/or aluminum in excess of the benchmarks or reference concentration for those pollutants established in the Permits. Specific examples of these violations occurred on each of the following days when Jopp collected a sample of its discharge that exceeded one or more of the applicable Permit's benchmarks for one or more toxic pollutants: December 15, 2021, December 30, 2021, March 19, 2022, April 18, 022, June 10, 2022, December 8, 2022, December 27, 2022, January 18, 2023, and March 10, 2023. These violations are ongoing or reasonably likely to recur.

56.    Jopp violated Schedule A.3.b of the 2021 Permit (Schedule A.4.b of the 2017 Permit) by failing to comply with the investigation, reporting, and corrective action requirements in those permit conditions. Schedule A.3.b of the 2021 Permit (Schedule A.4.b of the 2017 Permit) requires Jopp to take certain actions upon becoming aware that a discharge from the Facility caused or contributed to an exceedance of water quality standards, including: investigating the conditions that triggered the violation; reviewing the SWPCP to ensure compliance with the permit; submitting a Water Quality Standards Corrective Action report within thirty days of receiving the relevant monitoring data, which report must meet certain criteria stated in the Permits; and implementing any required corrective actions before the next storm event or within thirty days after discovering the violation, whichever comes first. As explained above, Jopp has routinely caused or contributed to an exceedance of numeric and narrative water quality standards for several toxic pollutants. On each of these instances, Jopp has violated Schedule A.3.b of the 2021 Permit (Schedule A.4.b of the 2017 Permit) by failing to comply with the investigation, reporting, and corrective action requirements in those permit

Kampmeier & Knutsen PLLC
1300 SE Stark Street, Suite 202
Portland, Oregon 97214
(503) 719-5641

conditions. Jopp violated these requirements each and every day since June 12, 2019 by failing

to investigate the conditions triggering water quality standards violations; failing to review the

SWPCP to ensure compliance with the applicable permit; failing to submit each and every

required Water Quality Standards Corrective Action report within thirty days of receiving the

relevant monitoring data; and failing to implement required corrective actions before the next

storm event or within thirty days after discovering the violation, whichever comes first. These

violations are ongoing or reasonably likely to recur.

57.    Each of these requirements and Defendant's violations thereof are described in

Section II.F of the Notice Letter and are hereby incorporated by reference.

**7.    Defendant Violated the Permits by Failing to Comply with the Permits' Monitoring and Reporting Requirements.**

58.    Schedule B.2 of the 2021 Permit (Schedule B.1.a of the 2017 Permit) states that

the permit registrant must monitor stormwater discharges for various statewide benchmarks,

including pH, total copper, total lead, total zinc, and total suspended solids. Schedule B.4 of the

2021 Permit states that the permit registrant must "monitor for . . . total iron at all discharge

points into impaired receiving waters that correspond with the specific pollutant for which the

water body is impaired." *See also* 2017 Permit, Schedule B.1.b.i. (requiring monitoring for

impairment pollutants identified in the Facility's permit assignment letters). Schedule B.5 of the

2021 Permit states that the permit registrant must "monitor for fecal coliform and enterococcus at

all discharge points that correspond to the specific pollutant for which the water is impaired."

Schedule B.6 of the 2021 Permit (Schedule B.1 of the 2017 Permit) emphasizes that the permit

registrant must monitor for applicable statewide benchmark pollutants and impairment

pollutants. Schedule B.7.f and Table 6 of the 2021 Permit (Schedule B.2.f and Table 5 of the

2017 Permit) requires Jopp to monitor stormwater discharges for the above-mentioned pollutants

COMPLAINT - 24

"Four times per year, two samples between January 1 and June 30, and two samples between July 1 and December 31."

59.    Jopp has violated these monitoring requirements. After being issued the 1200-Z Permit in June 2019, Jopp violated the requirements of Schedule B.8 of the 2017 Permit by failing to timely submit DMRs during the 2019-2020 Permit year. Jopp also violated Schedules B.1.a, B.1.b, and B.2.f of the 2017 Permit during that same period by failing to monitor for applicable statewide benchmarks and impairment pollutants because Jopp did not take any of the 4 required samples for benchmark parameters, did not take any of the 4 required samples for sector-specific parameters required by Schedule E of the 2017 Permit, and did not take any of the 4 required samples for impairment pollutants.

60.    Jopp also failed to monitor at each required discharge point, in violation of Schedule B.7.c of the 2021 Permit (Schedule B.2.c of the 2017 Permit), which requires Jopp to monitor at each discharge point, unless a discharge point serves an area without exposure of stormwater to industrial activities, or if that discharge point has an effluent that is substantially similar to the effluent of a monitored discharge point. For example, Jopp has violated the requirements in Schedule B.7.c of the 2021 Permit (Schedule B.2.c of the 2017 Permit) by failing to monitor and sample in DB-2 even though it has contained an uncovered metal recycling bin, meaning it contained industrial activity. Similarly, Jopp has violated the requirements in Schedule B.7.c of the 2021 Permit (Schedule B.2.c of the 2017 Permit) by failing to monitor and sample in DB-3 even though DB-3 is not substantially similar to any other drainage basin because it has been used as a boneyard for old railroad equipment. Jopp violated the monitoring requirements in Schedule B.7.c of the 2021 Permit (Schedule B.2.c of the 2017 Permit) on each of these instances, and every other instance where it failed to perform

Kampmeier & Knutsen PLLC
1300 SE Stark Street, Suite 202
Portland, Oregon 97214
(503) 719-5641

monitoring of discharges from a drainage basin that included exposure of stormwater to industrial activity that was not substantially similar to an industrial area with a monitored discharge point.

61.     These requirements and Defendant's violations thereof are described in Section II.G of the Notice Letter and are hereby incorporated by reference. These violations are ongoing or reasonably likely to recur.

**8.     Defendant Violated the Permits by Failing to Comply with the Permits' Requirements to Prepare and Submit Noncompliance Reports.**

62.     Schedules F.D6 of the Permits require Jopp to report all instances of noncompliance with the permit not reported under General Condition D4 or D5 at the time Jopp submits monitoring reports. Each noncompliance report must include: (1) a description of the noncompliance and its cause; (2) the period of noncompliance, including exact dates and times; (3) the estimated time the noncompliance is expected to continue if it has not been corrected; and (4) the steps taken or planned to reduce, eliminate, and prevent reoccurrence of the noncompliance.

63.     Jopp has violated Schedules F.D6 of the Permits by failing to prepare and submit noncompliance reports that fully and accurately identify Jopp's noncompliance with the Permits and that include all the required information. These requirements and Defendant's violations thereof are described in Section II.H of the Notice Letter and are hereby incorporated by reference. These violations have occurred each and every day since June 12, 2019, and are ongoing or reasonably likely to recur.

//

//

COMPLAINT - 26

9.      **Defendant Violated the Permits by Failing to Comply with the Permits'
        General Conditions.**

64.     Schedules F.A1 of the Permits require Jopp to comply with all conditions of its

Permits. Each and every permit violation described herein is also a violation of Schedules F.A1

of the Permits. Jopp violated these Permit conditions each and every day since June 12, 2019.

These violations are ongoing or reasonably likely to recur.

65.     Schedules F.A3 of the Permits require Jopp to take all reasonable steps to

minimize or prevent any discharge in violation of the Permits. Each and every permit violation

described herein is also a violation of Schedules F.A3 of the Permits. Jopp violated these Permit

conditions each and every day since June 12, 2019, by violating the Permits and by failing to

take reasonable steps to minimize or prevent discharges in violation of the Permits. These

violations are ongoing or reasonably likely to recur.

66.     Schedules F.B1 of the Permits require Jopp to "at all times properly operate and

maintain all facilities and systems of treatment and control (and related appurtenances) that are

installed or used by the permittee to achieve compliance with the conditions" of the Permits.

Jopp violated these Permit conditions each and every day since June 12, 2019 by failing to

properly operate and maintain all systems of treatment and control, including Jopp's SWPCP, to

achieve compliance with the Permits. These violations are ongoing or reasonably likely to recur.

67.     These requirements and Defendant's violations thereof are described in Section

II.I of the Notice Letter and are hereby incorporated by reference.

68.     Defendant's unlawful discharges degrade the environment and the water quality

of the Willamette River and the Columbia River.

COMPLAINT - 27

69.     Defendant's unlawful discharges of pollutants and permit violations were avoidable had Defendant been diligent in overseeing and controlling operations, maintenance, monitoring, and compliance with the law.

70.     Defendant has benefitted economically from its unlawful discharges of pollutants and permit violations.

71.     The NPDES permit violations committed by Defendant are continuing or are reasonably likely to recur. Any and all additional violations of Defendant's NPDES Permits and the CWA which occur after those described in NEDC's Notice Letter but before a final decision in this action are continuing violations subject to this Complaint.

72.     Without the imposition of appropriate civil penalties and the issuance of an injunction, Defendant is likely to continue to violate its NPDES permit and the CWA to the further injury of NEDC, its members, and others.

## VI.     CAUSE OF ACTION.

73.     Plaintiff hereby alleges and incorporates by reference all of the preceding paragraphs.

74.     Defendant Jopp is a "person" within the meaning of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and is subject to suit under the Act's citizen suit provision, 33 U.S.C. § 1365.

75.     The violations of Defendant's NPDES Permits described herein and in the Notice Letter constitute violations of an "effluent standard or limitation" as that term is defined by Section 505 of the Act, 33 U.S.C. § 1365. Defendant Jopp has violated and is violating an "effluent standard or limitation" as that term is defined by Section 505 of the Act, 33 U.S.C. § 1355, by violating the terms and conditions of its NPDES Permits.

COMPLAINT - 28

## VII.    RELIEF REQUESTED.

Wherefore, NEDC respectfully requests that this Court grant the following relief:

A.      Declare that Defendant has violated and continues to be in violation of its NPDES Permits and the CWA, as alleged herein;

B.      Enjoin Defendant from operating its Facility in a manner that results in further violations of its NPDES Permits or the CWA;

C.      Order Defendant to immediately implement a SWPCP that complies with the NPDES Permits or any subsequent NPDES permit applicable to the Facility;

D.      Order Defendant to allow NEDC to participate in the development and implementation of Defendant's SWPCP;

E.      Order Defendant to provide NEDC, for a period of time beginning on the date of this Court's Order granting NEDC relief and running for one year after Defendant achieves compliance with all of the conditions of its NPDES permit, with copies of all reports and other documents that Defendant submits to the EPA, ODEQ, or BES regarding Defendant's NPDES Permits for the Facility at the time those documents are submitted to these agencies;

F.      Order Defendant to take specific actions to remediate the environmental harm and ongoing impacts caused by its violations;

G.      Order Defendant to develop and/or comply with appropriate quality assurance procedures to ensure future compliance with the CWA;

H.      Grant such other preliminary and/or permanent relief as NEDC may from time to time request during the pendency of this case;

I.      Order Defendant to pay civil penalties pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a), and 40 C.F.R. § 19;

COMPLAINT - 29

J.      Award NEDC its litigation expenses, including reasonable attorneys' and expert

witness fees, as authorized by Section 505(d) of the CWA, 33 U.S.C. § 1365(d); and

K.      Award such other relief as this Court deems appropriate.

RESPECTFULLY SUBMITTED this 14th day of September 2023.

Kampmeier & Knutsen PLLC

By:  s/ Emma Bruden
Emma Bruden, OSB #163525
1300 SE Stark Street, Suite 202
Portland, Oregon 97214
Telephone: (503) 719-5641
Email: emma@kampmeierknutsen.com

Northwest Environmental Defense Center

By:  s/ Jonah Sandford
Jonah Sandford, OSB # 154711
10101 S. Terwilliger Blvd.
Portland, Oregon 97219
Telephone: (503)-768-6726
Email: jonah@nedc.org

*Attorneys for Plaintiff Northwest Environmental Defense Center*

Exhibit 1

# KAMPMEIER & KNUTSEN PLLC

## ATTORNEYS AT LAW

PAUL A. KAMPMEIER
Licensed in Washington
206.858.6983
paul@kampmeierknutsen.com

April 28, 2023

*Via Certified Mail—Return Receipt Requested*

Managing Agent                          Managing Agent
Jopp Energy Company                      Jopp Energy Company
10300 North Lombard Street               2509 142nd Avenue KP S
Portland, Oregon 97203                   Lakebay, Washington 98349

**RE:    Notice of Intent to File Suit under the Clean Water Act.**

Dear Managing Agent:

This letter provides Jopp Energy Co. (hereinafter "Jopp") with sixty days' notice of the Northwest Environmental Defense Center's intent to file a citizen lawsuit against it under Section 505 of the Clean Water Act, 33 U.S.C. § 1365, for the Clean Water Act ("CWA") and National Pollutant Discharge Elimination System ("NPDES") permit violations alleged and described in this letter. The Northwest Environmental Defense Center (hereinafter "NEDC") is a non-profit organization dedicated to protecting the natural environment of the Pacific Northwest. Kampmeier & Knutsen, PLLC and NEDC Executive Director Jonah Sandford represent NEDC in this matter. Any response to this notice of intent to sue should be directed to Paul Kampmeier at Kampmeier & Knutsen, PLLC at the address below.

This notice letter pertains to the Jopp facility located at 10300 North Lombard Street, Portland, Oregon 97203 (hereinafter "the Facility"). To limit and control water pollution in Portland, Oregon, the Oregon Department of Environmental Quality (hereinafter "ODEQ") authorized Jopp to discharge pollutants and stormwater associated with industrial activity from the Facility to the Willamette River from June 12, 2019 to June 30, 2021 by granting Jopp coverage under Oregon's 2017 General NPDES Stormwater Discharge Permit No. 1200-Z (Permit Number 126334), which permit ODEQ reissued upon reconsideration on October 23, 2018 (hereinafter "2017 Permit"). ODEQ then authorized Jopp to discharge pollutants and stormwater associated with industrial activity from the Facility to the Willamette River from July 1, 2021 to June 30, 2026 by granting Jopp coverage under Oregon's 2021 General NPDES Stormwater Discharge Permit No. 1200-Z (Permit Number 126334) (hereinafter "2021 Permit"). The 2017 Permit and 2021 Permit (collectively "the Permits") set forth specific requirements Jopp must comply with to protect Oregon's waters and to ensure Jopp's compliance with the federal Clean Water Act at the Facility.

Jopp has violated and continues to violate the terms and conditions of the Permits. NEDC intends to sue Jopp for the alleged violations of the Permits described herein under the Clean Water Act's citizen suit provision, which authorizes citizens to file a federal lawsuit against any person (including a corporation or other business entity) "alleged to be in violation of an effluent standard or limitation" under the Act, which includes "a permit or condition thereof issued under" the Act's NPDES permit program. 33 U.S.C. § 1365(a)(1), (f). All terms and conditions of a state-issued NPDES permit, such as 1200-Z permits, are enforceable via federal court citizen suits. *See, e.g., Nw. Envtl. Advocates v. City of Portland, 56 F.3d 979, 986 (9th Cir. 1995); Or. State Pub. Interest Research Grp., Inc. v. Pac. Coast Seafoods Co., 361 F. Supp. 2d 1232, 1236, 1238 (D. Or. 2005).*

Unless Jopp promptly resolves its violations of the Permits and the Clean Water Act to NEDC's satisfaction, NEDC will file a citizen lawsuit against Jopp in U.S. District Court immediately following the expiration of the required sixty-day notice period that commences with this notice letter. NEDC intends to seek injunctive relief and civil penalties in the amount of up to $64,618 per day for each violation of the CWA. NEDC intends to sue for all violations, including those discovered after the date of this notice letter and those occurring after NEDC files a complaint in court. If Jopp has any information showing that one or more of the violations outlined in this notice did not occur or is stated incorrectly, please provide that information to NEDC immediately, specifying the violation in question.

## I.    BACKGROUND.

Congress enacted the Clean Water Act in 1972 to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). In doing so, Congress declared a national goal of eliminating discharges of pollutants to navigable waters by 1985. Section 301 of the CWA—the heart of the statute—prohibits the discharge of pollutants except, *inter alia*, in accordance with the terms of a NPDES permit issued pursuant to section 402 of the Act. 33 U.S.C. § 1311(a).

The State of Oregon implements a NPDES permit program administered by ODEQ. ODEQ periodically issues a general NPDES permit authorizing discharges of stormwater associated with industrial activity in Oregon. For facilities that obtain coverage under it, ODEQ's current General NPDES Stormwater Discharge Permit Number 1200-Z authorizes discharges of industrial stormwater, provided the discharges are in compliance with the terms and conditions of the permit. Any other direct or indirect discharge to waters of the state is prohibited, and any noncompliance with an NPDES permit "constitutes a violation of…the Clean Water Act…and is grounds for enforcement action…." *See* 2021 Permit Schedules A.14.a and F.A1; 2017 Permit Schedules A.12.a and F.A1.

A central requirement of ODEQ's 1200-Z NPDES permit is that permittees must properly prepare, implement, and keep current a Stormwater Pollution Control Plan ("SWPCP"). There are a number of requirements that must be included in a SWPCP, including a site description, adequate site controls that eliminate or minimize exposure of pollutants to stormwater, and recordkeeping, sampling, and reporting procedures. *See* Schedule A.10 of the 2021 Permit (Sch. A.7 of the 2017 Permit).

A SWPCP's effectiveness is then determined by comparing stormwater monitoring results with pollutant benchmarks in the 1200-Z Permit. The benchmarks are numeric concentration levels set for certain pollutants, which provide a standard that determines whether a facility's SWPCP is effectively reducing or eliminating stormwater pollution in compliance with the permit. *See* Sch. A.5 of the 2021 Permit (Sch. A.9 of the 2017 Permit). If a stormwater discharge exceeds an established benchmark, the permittee must investigate the cause of the exceedance, review the SWPCP, and determine what corrective actions must be taken to ensure future compliance with these standards. Visual monitoring for floating solids and oil and grease sheen provides an additional assurance that the SWPCP is effective. *See* Sch. B.12.a.vii of the 2021 Permit (Sch. B.7.a.vii of the 2017 Permit). In no event may anyone, permitted or unpermitted, discharge pollutants in an amount or manner that causes or contributes to a violation of state water quality standards. *See* Sch. A.3.a of the 2021 Permit (Sch. A.4.a of the 2017 Permit); *see also* 33 U.S.C. § 1311.

## II.    JOPP'S NPDES PERMIT VIOLATIONS.

Jopp has violated and is violating the Clean Water Act by discharging pollutants and stormwater associated with industrial activity from its Facility in violation of the terms and conditions of the Permit. Jopp is in ongoing violation of an "effluent standard or limitation" under the Clean Water Act. 33 U.S.C. § 1365(a)(1).

A.    Violations of the Narrative, Technology-Based Effluent Limitations, and the Control Measures Required to Meet Those Effluent Limitations.

Schedule A.1 of the Permits requires Jopp to meet that Permits' listed narrative technology-based effluent limits. Specifically, Jopp must, among other things, "minimize exposure of manufacturing, processing, [and] material storage areas...to rain, snow, snowmelt and runoff" (Schedule A.1.a); employ measures to eliminate or minimize oil and grease contamination of stormwater discharges (Schedule A.1.b); "recycle or properly dispose of wastes to eliminate or minimize exposure of pollutants to stormwater" (Schedule A.1.c); "stabilize exposed areas and contain runoff using structural and nonstructural controls to minimize erosion of soil at the site and sedimentation" (Schedule A.1.d); "employ screens, booms, settling ponds, or other methods to eliminate or minimize waste, garbage and floatable debris in stormwater discharges and ensure that this debris is not discharged to receiving waters" (Schedule A.1.e); "minimize generation of dust and off-site tracking of raw, final or waste materials" (Schedule A.1.f); "routinely clean all exposed areas that may contribute pollutants to stormwater using such measures as sweeping at regular intervals, litter pick-up, keeping materials orderly and labeled, prompt clean- up of spills and leaks, proper maintenance of vehicles and stowing materials in appropriate containers" (Schedule A.1.g); minimize the potential for spills and develop spill prevention and response plans (Schedule A.1.h); regularly inspect, clean, maintain and repair all equipment, systems, areas, and stormwater control measures (Schedule A.1.i); develop and maintain an employee education program on the components and goals of the SWPCP (Schedule A.1.j); and eliminate any non-stormwater discharges not authorized by a NPDES permit.

3

Additionally, Schedule A.2.a of the 2021 Permit (Sch. A.3.a of the 2017 Permit) requires Jopp "to select, design, install, implement and maintain control measures…to meet the narrative and numeric technology based effluent limits in Schedule A.1 and Schedule E…of this permit and [to] describe these measures…in the SWPCP." Schedule A.2.b of the 2021 Permit (Sch. A.3.b of the 2017 Permit) requires Jopp Energy to "…reduce or eliminate pollutants to the extent achievable using control measures that are technologically available and economically practicable and achievable in light of best industry practice."

Jopp violated and continues to violate Schedule A.1, A.2.a, and A.2.b of the 2021 Permit (Sch. A.1, A.3.a, and A.3.b of the 2017 Permit) by failing to meet the narrative technology-based effluent limits in Schedule A.1. of the Permits; by failing to select, design, install, implement, and maintain control measures to ensure compliance with the narrative technology-based effluent limits in Schedules A.1. and Schedules E of the Permits; and by failing to reduce or eliminate pollutants to the extent achievable. These violations have occurred each and every day since June 12, 2019.

       *1.    Specific violations documented by agency personnel.*

Portland Bureau of Environmental Services ("BES") staff have documented several specific instances of Jopp's violations of the above permit requirements. During an August 6, 2020 inspection BES staff observed a recycling bin that did not have a lid and was uncovered, and a Diesel Exhaust Fluid tank and additional drums that were not stored within secondary containment. Next, during a December 17, 2021 site visit BES staff observed heavy accumulation of sediment, sawdust, and debris on the pavement coming from overflow stockpiles in Drainage Basin 2, with stormwater then carrying the sediment debris off-site. And during a February 9, 2023 inspection, BES staff observed stockpiles of sawdust extending over the boundary of drainage basin 1, with erosion from those stockpiles running off downslope onto the Port of Portland's property. On the same date, BES staff observed heavy sawdust accumulation on the adjacent Port of Portland road, and at a March 9, 2023 follow-up inspection observed Jopp's woodchipper producing heavy dust particles which were blowing onto the Port of Portland's road and surrounding area.

On each of these days, Jopp was in violation of Schedules A.1, A.2.a, and A.2.b of the 2021 Permit (Sch. A.1, A.3.a, and A.3.b of the 2017 Permit) because on each of these days Jopp failed to comply with the Permit's narrative technology-based effluent limits, which require Jopp to eliminate or minimize exposure of pollutants to stormwater; require Jopp to cover all waste contained in bins or dumpsters; require Jopp to store all hazardous substances and petroleum/oil liquids within berms or other secondary containment devices; require Jopp to minimize generation of dust, off-site tracking and discharge of soil, particulates and raw, final or waste materials; and require Jopp to stabilize exposed areas and contain runoff using structural and nonstructural controls to minimize erosion of soil at the site and sedimentation. Additionally, Jopp violated these same permit requirements each and every other day since June 12, 2019 when Jopp left waste or garbage uncovered; when Jopp failed to store DEF tanks and other drums within secondary containment; when Jopp allowed accumulation of sediment, sawdust, and debris on the pavement at the Facility; when Jopp failed to contain runoff using controls to

minimize erosion of soil at the site and sedimentation; or when Jopp failed to minimize generation of dust at the Facility.

> 2.      *Jopp's stormwater discharges regularly exceed numeric benchmarks in the 2017 and 2021 Permits, demonstrating ongoing failures to comply with the Permits.*

Water quality sampling conducted by Jopp at the Facility also demonstrates that Jopp violated Schedules A.1, A.2.a, and A.2.b of the 2021 Permit (A.1, A.3.a, and A.3.b of the 2017 Permit). Schedule A.5.a—b of the 2021 Permit explains that benchmarks are screening concentrations, exceedances of which require the permittee to assess "whether site controls are effectively reducing pollutant concentrations in stormwater discharges." *See also* 2017 Permit Schedule A.9 (benchmarks "are designed to assist the permit registrant in determining whether its site controls are effectively reducing pollutant concentrations in stormwater discharged from the site."). Schedule B.2 of the 2021 Permit requires Jopp to monitor stormwater discharges from the Facility to determine whether the discharges exceed any of the following statewide benchmarks[1]: pH 5.5-9.0 S.U.; total copper 0.015 mg/L; total lead 0.24 mg/L; total zinc 0.24 mg/L; and total suspended solids 30 mg/L.[2] In addition, Jopp discharges to a water body that is not meeting water quality standards for various pollutants, including iron, and Schedule B.4 of the 2021 Permit and ODEQ's permit assignment letters to Jopp require Jopp to monitor stormwater discharges from the Facility to determine whether the discharges exceed the impairment pollutant benchmark for iron of 10.0 mg/L.

As indicated in Tables 1 and 2 below, stormwater discharges from the Facility have repeatedly exceeded the statewide and impairment pollutant benchmarks in the Permits and the Facility's permit assignment letters. The history and pattern of stormwater sample results that exceed a statewide or impairment pollutant benchmark for the Facility demonstrate that Jopp violated its Permits each and every day since June 12, 2019 by failing to comply with the narrative technology-based effluent limits in Schedules A.1 in the Permits, and by failing to select, design, install, implement, and maintain control measures necessary to meet those limits, in violation of Schedule A.2.a of the 2021 Permit (Sch. A.3.a of the 2017 Permit). Further, Jopp's Facility's site controls are not effectively eliminating or minimizing pollutants in stormwater discharged from the Facility, and are not reducing or eliminating pollutants to the extent achievable, in violation of Schedule A.2.b of the 2021 Permit (Sch. A.3.b of the 2017 Permit).

//
//
//
//

---

[1]      The benchmarks that follow are for the Portland Harbor Georegion, where Jopp Energy discharges its stormwater.

[2]      Schedule A.9 of the 2017 Permit established the following statewide benchmarks applicable to Jopp: pH 5.5-9.0 S.U.; total copper 0.020 mg/L; total lead 0.040 mg/L; total zinc 0.12 mg/L; and total suspended solids 30 mg/L.

| | | | Table 1 Benchmark Exceedances Reported by Jopp Energy Co. Under the 2017 1200-Z Permit | | | |
|---|---|---|---|---|---|---|
| Pollutant | Chemical Oxygen Demand | Total Suspended Solids | Copper, Total | Zinc, Total | Aluminum, Total | Iron, Total |
| **Permit Benchmarks** | **120 mg/L** | **30 mg/L** | **0.02 mg/L** | **0.12 mg/L** | **.75 mg/L** | **1 mg/L** |
| 12/11/20 | | 113 | | .122 | .977 | 2.75 |
| 12/20/20 | | 240 | | | | 1.21 |
| 02/01/21 | 124 | 64 | | | | 1.07 |
| 05/27/21 | 200 | 596 | .0336 | | 10.7 | 25.4 |

| | | | Table 2 Benchmark Exceedances Reported by Jopp Energy Co. Under the 2021 1200-Z Permit | | | |
|---|---|---|---|---|---|---|
| Pollutant | Chemical Oxygen Demand | Total Suspended Solids | Copper, Total | Zinc, Total | Aluminum, Total | Iron, Total |
| **Permit Benchmarks** | **120 mg/L** | **30 mg/L** | **0.015 mg/L** | **0.24 mg/L** | **1.10 mg/L** | **10 mg/L** |
| 12/15/21 | 153 | 302 | .0206 | | 3.31 | |
| 12/30/21 | 255 | 594 | .031 | .281 | 6.4 | 15.5 |
| 03/19/22 | | 128 | | | 1.78 | |
| 04/18/22 | | 102 | | | 2.52 | |
| 06/10/22 | | | .0488 | | | |
| 12/08/22 | | 132 | .0173 | | 6.75 | |
| 12/27/22 | | 129 | | | 4.71 | |

B.     SWPCP Violations.

Schedule A.2.a of the 2021 Permit (Sch. A.3.a of the 2017 Permit) requires Jopp to describe its pollutant control measures, maintenance schedules, and the frequency of housekeeping measures in its SWPCP. Schedule A.8.c of the 2021 Permit (Sch. A.6.c of the 2017 Permit) requires Jopp to include in its SWPCP each narrative technology-based effluent limit to eliminate or reduce the potential to contaminate stormwater and prevent any violation of instream water quality standards. Schedule A.10 of the 2021 Permit (Sch. A.7 of the 2017 Permit) sets forth the requirements for SWPCPs, including in Schedule A.10.b.vi of the 2021 Permit (Sch. A.7.b.vi of the 2017 Permit) the requirement that SWPCPs include a description of control measures installed and implemented to meet the technology and water quality based requirements in Schedules A.1-A.4 and any applicable sector-specific requirements in Schedule E. Schedule A.8.d of the 2021 Permit (Schedule A.6.d of the 2017 Permit) then requires Jopp to implement the SWPCP and any revisions to it.

BES staff has documented several instances where Jopp has failed to implement its SWPCP in violation of Schedule A.8.d of the 2021 Permit (Sch. A.6.d of the 2017 Permit.

During a site visit on August 6, 2020, BES staff observed several failures to implement specific site controls described in the April 2019 version of the Facility's SWPCP, including:

- The April 2019 SWPCP stated that employee education would occur no later than within 30 days of hiring an employee, and annually for all SWPCP-trained personnel. Jopp was unable to provide documents to indicate the completion of employee education.
- The April 2019 SWPCP included a description of site changes that were to be made in order to re-route sheet flow from discharging to the neighboring property by installing a berm and stormwater sump with a detention tank and stormwater discharge point, as well as the plugging of Catch Basin 1. This work had not been completed by the August 6, 2020 site visit.
- The April 2019 SWPCP stated that metal recycling bins at the Facility are covered. During the August 6, 2020 inspection a recycling bin did not have a lid and was uncovered.
- The April 2019 SWPCP site map described drainage basin 2 (DB-2) as non-industrial. During the inspection, metal recycling bins were located in DB-2, as opposed to DB-1, as described in the SWPCP.
- The April 2019 SWPCP stated that the diesel fueling and DEF dispenser tank were contained. During the inspection, the DEF tank and additional drums were not stored with secondary containment.

BES staff identified additional violations of Schedule A.8.d of the 2021 Permit (Sch. A.6.d of the 2017 Permit) during a December 17, 2022 site visit and follow-up inspection on January 26, 2022. First, BES staff again noted that Jopp failed to provide records to document the completion of employee education, and Jopp acknowledged that employee education had not occurred in accordance with the SWPCP. Next, although the November 2021 version of Jopp's SWPCP describes drainage basin 5 (DB-5) as non-industrial, on December 17, 2021 BES staff observed DB-5 being used for overflow stockpiles of ground pallets. Then, during the January 26, 2022 follow-up inspection BES staff observed storage of railroad material in DB-5. Each of these failures to implement control measures or practices described in the SWPCP is a violation of Schedule A.8.d of the 2021 Permit (Sch. A.6.d of the 2017 Permit).

In addition, Jopp violated Schedules A.2.a, A.8.c, A.10, and A.8.d of the 2021 Permit (Sch. A.3.a, A.6.c, A.7, and A.6.d of the 2017 Permit) each and every day since June 12, 2019 by failing to maintain and implement an adequate SWPCP at the Facility. The extensive benchmark exceedances listed in Tables 1 and 2, the extensive water quality violations and corrective action violations described herein, and ongoing discharges of polluted industrial stormwater from the Facility demonstrate that Jopp is not maintaining or implementing a SWPCP that includes adequate control measures and all of the required SWPCP components.

Finally, Jopp has violated Schedule A.2.f of the 2021 Permit, which states:

If modifications to the control measures are necessary to meet the technology-based effluent limits in this permit, the permit registrant must implement the modification

7

before the next storm event if practicable or no later than 30 calendar days from
discovering the violation, unless DEQ or agent approve a later date.

*See also* 2017 Permit Sch. A.3.f. A review of Jopp's permit files with BES shows that Jopp has
violated and is violating Schedule A.2.f of the 2021 Permit (Sch. A.3.f of the 2017 Permit) by
failing to take sufficient corrective actions, including revision of its SWPCP and implementation
of modified control measures, even though such corrective actions are necessary to meet the
effluent limits in the Permits. These violations have occurred each and every day since June 12,
2019.

C.    Tier 1 Corrective Action Violations.

        Schedule A.11 of the 2021 Permit (Sch. A.10.a and B.7.f.vi of the 2017 Permit) requires
Jopp to undertake a Tier I corrective action response each time a stormwater monitoring result
exceeds any statewide or sector-specific benchmark, or when visual observations show signs of
pollution in the discharge. Specifically, that permit condition requires Jopp, within 30 days of
obtaining monitoring results demonstrating a benchmark exceedance or completing a monthly
visual inspection showing signs of pollution in the discharge, to: (1) investigate the cause of the
elevated pollutant levels and develop a plan for controlling significant materials from previous
operations; (2) review the SWPCP and evaluate the selection, design, installation and
implementation of control measures to ensure compliance with the permit, including evaluating
whether any previous pollutant source isolation actions are complete and whether additional
modifications are necessary; (3) evaluate treatment measures, infiltration devices and mass
reduction measures to see if they were properly installed, maintained and implemented and
whether maintenance, correction or modifications are necessary; and (4) assess and implement
these corrective actions at all substantially similar discharge points. Per Schedule A.11.c.v of the
2021 Permit (Sch. A.10.a.iv of the 2017 Permit), a Tier I report must include (1) the results of its
investigation into the cause of elevated pollutant levels; (2) corrective actions taken or to be
taken, or, if determined that no corrective action is necessary, the basis for this determination;
and (3) documentation of whether SWPCP revisions are necessary. Schedule A.11.d.i of the
2021 Permit (Sch. A.10.b of the 2017 Permit) then requires Jopp to implement necessary
corrective actions before the next storm event, if possible, or no later than 30 days after receiving
the monitoring results, whichever comes first.

        Jopp has routinely violated Schedules A.11.c and A.11.d of the 2021 Permit (Sch.
A.10.a.iv and A.10.b of the 2017 Permit) by failing to prepare and submit an adequate Tier I
corrective action report, and by failing to perform an adequate corrective action response to bring
the facility into compliance with benchmark standards. Jopp has failed to complete Tier I
corrective action responses and reports in response to benchmark exceedances or visual
observations showing signs of pollution. Jopp did not complete a Tier I corrective action
response and Tier I report within 30 days following receipt of laboratory results for samples
collected on December 11, 2020, December 30, 2020, February 1, 2021, May 27, 2021 and
December 15, 2021, despite multiple benchmark exceedances on each of these dates. Each of
these instances was a violation of Schedule A.10.a and A.10.b of the 2017 Permit (Sch. A.11.c
and A.11.d of the 2021 Permit).

D.    Violations of Inspection Requirements.

Schedule B.12 of the 2021 Permit (Sch. B.7.a. of the 2017 Permit) requires Jopp to perform monthly inspections of "areas where industrial materials or activities are exposed to stormwater and areas where stormwater control measures, structures, catch basins, and treatment facilities are located." These inspections must include "visual observation for the presence of floating and suspended solids, color, odor, foam, visible oil sheen, or other obvious indicators of pollution in the stormwater discharge at all discharge point(s)...." When these observations show evidence of such stormwater pollution, Jopp must complete a Tier I corrective action report. Per Schedule B.12.c of the 2021 Permit (2017 Permit Sch. B.7.c), these visual observations "must be conducted during a discharge event if one occurs during the month, regardless whether the monthly site inspection has already occurred." Inspections must include all discharge points. And Schedule B.12.i of the 2021 Permit and Schedule B.7.f. of the 2017 Permit require Jopp to document all inspections in an inspection report that includes certain specific information and that is retained on site and submitted to ODEQ or BES upon request.

Jopp has routinely violated these inspection requirements. Records available to NEDC indicate that Jopp failed to perform any required monthly inspections through at least April 2022, and failed to document any inspections in an inspection report. As a result, Jopp violated Schedule B.12 of the 2021 Permit (Sch. B.7 of the 2017 Permit) each month from June 2019 through March 2022, and every other month where it failed to perform the required inspections and document those inspections in an inspection report. In addition, Jopp violated Schedule B.12 of the 2021 Permit in June 2022, September 2022, December 2022, and January 2023, because in each of those months Jopp conducted visual observations on days when there was no discharge occurring, in violation of Schedule B.12.c of the 2021 Permit.

E.    Violations of Recordkeeping Requirements.

Schedule B.16 of the 2021 Permit (Sch. B.10 of the 2017 Permit) requires that Jopp record and maintain certain information at the Facility, including per Schedule B.16.d of the 2021 Permit (Sch. B.10 of the 2017 Permit) documentation of maintenance and repairs of control measures and treatment systems and per Schedule B.16.g of the 2021 Permit (Sch. B.10.f of the 2017 Permit) all inspection reports.

During a stormwater inspection on August 6, 2020 BES staff noted that the facility failed to record and maintain stormwater records onsite, including records of preventative maintenance, housekeeping, facility inspection, stormwater sampling results, and employee education records, a violation of Sch.B.10.d of the 2017 Permit. Similarly, during an inspection on January 26, 2022, BES noted that the facility again failed to record and maintain stormwater records onsite, including logs of preventative maintenance, housekeeping, facility inspection, and employee education, a violation of Sch.B.16 of the 2021 Permit. Jopp has violated Sch.B.12 and Sch.B.16 of the 2021 Permit (Sch.B.7 and Sch.B.10 of the 2017 Permit) on each of these BES inspection dates, and each and every other day in which the documentation of employee education, maintenance and repairs of control measures and treatment systems, or visual observations were not retained at the Facility and available upon request.

9

F.    Violations of Water Quality Based Effluent Limitations and Related Reporting
      Requirements.

Jopp violated the Permits and the Clean Water Act by discharging pollutants and
stormwater associated with industrial activity in an amount or manner that causes or contributes
to violations of the instream water quality standards established in Oregon Administrative Rule
("OAR") 340-041 for the Portland Harbor, in violation of Schedules A.3 and F.A6 of the 2021
Permit (Sch. A.4.a and F.A6 of the 2017 Permit). Schedule A.3.a of the 2021 Permit (Sch. A.4.a
of the 2017 Permit) prohibits Jopp from causing or contributing to a violation of instream water
quality standards as established in Oregon Administrative Rules 340-041. And Schedules F.A6
of the Permits require Jopp to comply with any applicable effluent standards or prohibitions
established under OAR 340-041-0033 for toxic pollutants.

OAR 340-041-007(1) states that "the highest and best practicable treatment and/or
control of wastes, activities, and flows must in every case be provided so as to maintain...toxic
materials...at the lowest possible levels." OAR 340-041-0033(1) prohibits the introduction of
toxic substances above natural background levels in concentrations and/or combinations that
may be harmful to public health, safety, aquatic life, and wildlife. And OAR 340-041-0033(2)
states that levels of toxic substances in waters of the state may not exceed the applicable aquatic
life criteria as defined in Table 30 under OAR 340-041-0083. ODEQ established these and other
water quality standards to protect human health and other important beneficial uses such as
recreation, drinking water sources, and habitat for salmon and steelhead and other aquatic life.
Or. Rev. Stat. §§ 468B.015, 468B.048.

The Permits established benchmark concentrations for various pollutants based on these
water quality standards. Table 30 in OAR 340-041-8033 identifies the concentrations of toxic
pollutants that may be harmful to aquatic life. In the Permits and in its permit assignment letters
to Jopp, ODEQ incorporated the iron criterion in Table 30 as the impairment benchmark
concentration for iron, and used the copper, lead, zinc, and aluminum criteria to establish
benchmarks for those pollutants.

Jopp has violated and continues to violate Schedules A.3.a and F.A6 of the 2021 Permit
(Sch. A.4.a and F.A6 of the 2017 Permit) by discharging toxic pollutants from the Facility in
amounts or manners that cause or contribute to violations of the narrative and numeric water
quality standards identified above. As indicated in Tables 1 and 2 above, discharges from the
Facility routinely contain iron, copper, zinc, and aluminum in concentrations that exceed relevant
benchmark concentrations. As a result, Jopp has violated and is violating Schedule F.A6 by
introducing iron, copper, zinc, and aluminum above natural background levels in concentrations
that may be harmful to public health, safety, aquatic life, and wildlife (OAR 340-041-0033(1).
These violations have occurred each and every day since June 12, 2019 on which there was 0.1
inch or more of precipitation at the Facility because, on information and belief, on those days
Jopp discharged industrial stormwater from the Facility that contained copper, zinc, iron, and/or
aluminum in excess of the benchmark concentrations for those pollutants established in the
Permits. Specific examples of these violations occurred on each of the following days when Jopp
collected a sample of its discharge that exceeded one or more of the 2021 Permit's benchmarks

for toxic pollutants: December 15, 2021, December 30, 2021, March 19, 2022, April 18, 2022, June 10, 2022, December 8, 2022, and December 27, 2022. These violations are ongoing.

In addition, Jopp has violated and is violating Schedule F.A6 by failing to provide the highest and best practicable treatment and/or control of wastes, activities, and flows so as to maintain the lowest possible levels of toxic pollutants, as demonstrated by the routine elevated discharge concentrations of toxic pollutants copper, zinc, iron, and aluminum in Tables 1 and 2 above. These violations have occurred each and every day since June 12, 2019 on which there was 0.1 inch or more of precipitation at the Facility because, on information and belief, on those days Jopp discharged industrial stormwater from the Facility that contained copper, zinc, aluminum, and/or iron in excess of the benchmarks for those pollutants established in the Permits. Specific examples of these violations occurred on each of the following days when Jopp collected a sample of its discharge that exceeded one or more of the 2021 Permit's benchmarks for one or more toxic pollutants: December 15, 2021, December 30, 2021, March 19, 2022, April 18, 2022, June 10, 2022, December 8, 2022, and December 27, 2022. These violations are ongoing.

Finally, Jopp violated Schedule A.3.b of the 2021 Permit (Sch. A.4.b of the 2017 Permit) by failing to comply with the investigation, reporting, and corrective action requirements in those permit conditions. Schedule A.3.b of the 2021 Permit (Sch. A.4.b of the 2017 Permit) requires Jopp to take certain actions upon becoming aware that a discharge from the Facility caused or contributed to an exceedance of water quality standards, including: investigating the conditions that triggered the violation; reviewing the SWPCP to ensure compliance with the permit; submitting a Water Quality Standards Corrective Action report within thirty days of receiving the relevant monitoring data, which report must meet certain criteria stated in the Permits; and implementing any required corrective actions before the next storm event or within thirty days after discovering the violation, whichever comes first. As explained above, Jopp has routinely caused or contributed to an exceedance of numeric and narrative water quality standards for several toxic pollutants. On each of these instances, Jopp has violated Schedule A.3.b of the 2021 Permit (Sch. A.4.b of the 2017 Permit) by failing to comply with the investigation, reporting, and corrective action requirements in those permit conditions. Jopp violated these requirements each and every day since June 12, 2019 by failing to investigate the conditions triggering water quality standards violations; failing to review the SWPCP to ensure compliance with the applicable permit; failing to submit each and every required Water Quality Standards Corrective Action report within thirty days of receiving the relevant monitoring data; and failing to implement required corrective actions before the next storm event or within thirty days after discovering the violation, whichever comes first.

G.    Violations of Monitoring and Reporting Requirements.

Jopp has violated the monitoring requirements in Schedule B of the Permits. Schedule B.2 of the 2021 Permit (Sch. B.1.a of the 2017 Permit) states that the permit registrant must monitor stormwater discharges for various statewide benchmarks, including pH, total copper, total lead, total zinc, and total suspended solids. Schedule B.4 of the 2021 Permit states that the permit registrant must "monitor for…total iron at all discharge points into impaired receiving waters that correspond with the specific pollutant for which the water body is impaired." *See also*

11

2017 Permit Sch. B.1.b. Schedule B.5 of the 2021 Permit states that the permit registrant must "monitor for fecal coliform and enterococcus at all discharge points that correspond to the specific pollutant for which the water is impaired." Schedule B.6 of the 2021 Permit (Sch. B.1.b of the 2017 Permit) emphasizes that "[t]he permit registrant must monitor for: the applicable statewide benchmark pollutants identified in [Table 4 of the] permit" along with applicable impairment pollutants. Schedule B.7.f and Table 6 of the 2021 Permit (Sch. B.2.f and Table 5 of the 2017 Permit) requires Jopp to monitor stormwater discharges for the above-mentioned pollutants "Four times per year, two samples between January 1 and June 30, and two samples between July 1 and December 31."

Jopp violated the monitoring requirements in Schedule B of the Permits. After being issued the 1200-Z permit in June 2019, Jopp did not submit DMRs during the 2019-2020 Permit year, as required by Sch.B.8 of the 2017 Permit. Records made available to NEDC indicate that 0 of the 4 required samples were taken for benchmark parameters, 0 out of 4 samples were taken for sector-specific parameters required by Schedule E of the permit, and 0 out of 4 samples were taken for impairment pollutants. This failure to monitor for applicable statewide benchmarks and applicable impairment pollutants is a violation of Schedules B.1.a, B.1.b, and B.2.f of the 2017 Permit.

Jopp has also failed to monitor each required discharge point, in violation of Schedule B.7.c of the 2021 Permit (Sch. B.2.c of the 2017 Permit). Those permit conditions require Jopp to monitor each discharge point, unless a discharge point serves an area without exposure of stormwater to industrial activities, or if that discharge point has effluent that is substantially similar to the effluent of a monitored discharge point. At the August 6, 2020 inspection, BES staff noted that the Facility's Drainage Basin 2 (DB-2) was designated "non-industrial" on Jopp's SWPCP and was not being sampled. However, during the inspection an uncovered metal recycling bin—an industrial activity—was located in that area. Similarly, at the January 26, 2022 inspection, BES staff noted that the Facility's SWPCP designated Drainage Basin 3 (DB-3) as substantially similar to Drainage Basin 1 (DB-1), and thus discharge from DB-3 was not being sampled. However, during the inspection DB-3 was being used as a boneyard for old railroad equipment, meaning materials were present in DB-3 that were not present in DB-1 and DB-3 was not substantially similar to DB-1. Jopp violated the monitoring requirements in Schedule B.7.c of the 2021 Permit (Sch. B.2.c of the 2017 Permit) on each of these instances, and every other instance where it failed to perform monitoring of discharge from a drainage basin that included exposure of stormwater to industrial activity that was not substantially similar to an industrial area with a monitored discharge point.

H.    Violations for Failing to Prepare and Submit Noncompliance Reports.

Jopp violated Schedules F.D6 of the Permits each and every day since June 12, 2019 by failing to report its noncompliance with the Permits, as required by those permit conditions. Schedules F.D6 of the Permits require Jopp to report all instances of noncompliance with the permit not reported under General Condition D4 or D5 at the time Jopp submits monitoring reports. Each noncompliance report must include: (1) a description of the noncompliance and its cause; (2) the period of noncompliance, including exact dates and times; (3) the estimated time the noncompliance is expected to continue if it has not been corrected; and (4) the steps taken or

planned to reduce, eliminate, and prevent reoccurrence of the noncompliance. As described in this letter, Jopp has violated the Permits each and every day since June 12, 2019. Jopp also therefore violated Schedules F.D6 of the Permits each and every day since June 12, 2019 by failing to prepare and submit noncompliance reports that fully and accurately identify Jopp's noncompliance with the Permits and that include all the required information.

I.    Violations of General Conditions.

Each and every permit violation described herein is also a violation of Schedules F.A1 of the Permits, which require Jopp to comply with all conditions of its Permits. Additionally, each and every permit violation described herein is a violation of Schedules F.A3 of the Permits, which require Jopp to take all reasonable steps to minimize or prevent any discharge in violation of the Permits. Jopp violated these permit conditions each and every day since June 12, 2019 by violating the Permits and by failing to take reasonable steps to minimize or prevent discharges in violation of the Permits.

Each and every Permit violation described herein is also a violation of Schedules F.B1 of the Permits, which require Jopp to "at all times properly operate and maintain all facilities and systems of treatment and control (and related appurtenances) that are installed or used by the permittee to achieve compliance with the conditions" of the Permits. Jopp violated these permit conditions each and every day since June 12, 2019 by failing to properly operate and maintain all systems of treatment and control, including Jopp's SWPCP, to achieve compliance with the Permits.

### III.    PERSONS GIVING NOTICE.

The full name, address, and telephone number of the party giving notice is:

Northwest Environmental Defense Center
10101 S. Terwilliger Blvd.
Portland, Oregon 97219
Telephone: (503) 768-6726

### IV.    ATTORNEYS REPRESENTING NEDC.

The attorneys representing Northwest Environmental Defense Center in this matter are:

Paul Kampmeier                          Jonah Sandford
Kampmeier & Knutsen, PLLC               Northwest Environmental Defense Center
705 Second Avenue, Suite 901            10101 S. Terwilliger Blvd.
Seattle, Washington 98104               Portland, OR 97219
Telephone: (206) 858-6983               Telephone: (503) 768-6726

Brian Knutsen
Kampmeier & Knutsen, PLLC
1300 SE Stark Street, Suite 202

Portland, Oregon 97214
Telephone: (503) 841-6515

## V.    CONCLUSION.

All of the NPDES permit and Clean Water Act violations alleged and described in this notice of intent to sue are ongoing. At the conclusion of the 60-day notice period, NEDC intends to file a lawsuit against Jopp under the citizen suit provisions of Section 505 of the Clean Water Act, 33 U.S.C. § 1365. Each of the above-described violations subjects Jopp to civil penalties of up to $64,618 per day. See 40 CFR § 19.4. In addition to civil penalties, NEDC will seek injunctive relief to prevent further violations of the CWA and such other relief as is permitted by law, including recovery of NEDC's costs, attorneys' fees, expert witness fees, and other litigation costs. See 33 U.S.C. §§ 1365(a) and (d). Although the above-described violations reflect the information currently available to NEDC, NEDC intends to sue for all violations, including those yet to be uncovered and those committed after the date of this notice letter.

During the 60-day notice period NEDC will be willing to discuss effective remedies for the violations described in this letter. If you wish to pursue settlement discussions in the absence of litigation, we suggest that you initiate discussions within 10 days of receiving this notice so the parties can meet and discuss effective remedies for the violations alleged herein. NEDC does not intend to delay the filing of a complaint if discussions are ongoing when the notice period ends.

Kampmeier & Knutsen PLLC                    Northwest Environmental Defense Center

By:_____                    By:_____
    Paul Kampmeier                               Jonah Sandford

*Attorneys for Northwest Environmental Defense Center*

cc:    Michael S. Regan, Administrator, U.S. Environmental Protection Agency
       Casey Sixkiller, Region 10 Administrator, U.S. Environmental Protection Agency
       Director Leah Feldon, Oregon Department of Environmental Quality
       Janna Diane Jopp, Registered Agent for Jopp Energy Company

**CERTIFICATE OF SERVICE**

I, Mariah Harrod, declare under penalty of perjury of the laws of Oregon and the United

States that I am an attorney at Kampmeier & Knutsen, PLLC and that on April 28, 2023, I

caused copies of the foregoing Notice of Intent to Sue Under the Clean Water Act to be served

on the following by depositing them with the United States Postal Service, certified mail, return

receipt requested, postage prepaid:

Managing Agent
Jopp Energy Company
10300 North Lombard Street
Portland, Oregon 97203

Managing Agent
Jopp Energy Company
2509 142nd Avenue KP S
Lakebay, Washington 98349

Janna Diane Jopp, Registered Agent
Jopp Energy Company
10300 North Lombard Street
Portland, Oregon 97203

Director Leah Feldon
Oregon Department of Environmental Quality
700 NE Multnomah St., Suite 600
Portland, Oregon 97232

Administrator Michael S. Regan
U.S. Environmental Protection Agency
William Jefferson Clinton Building
1200 Pennsylvania Ave., N.W.
Mail Code 1101A
Washington, DC 20460

Regional Administrator Casey Sixkiller
U.S. Environmental Protection Agency, Region 10
1200 Sixth Avenue, Suite 155
Seattle, WA 98101

Mariah Harrod, WSBA No. 60585

15

Exhibit 2

# KAMPMEIER & KNUTSEN PLLC

## ATTORNEYS AT LAW

PAUL A. KAMPMEIER
Licensed in Washington
206.858.6983
paul@kampmeierknutsen.com

April 28, 2023

*Via Certified Mail—Return Receipt Requested*

| | |
|---|---|
| Managing Agent | Managing Agent |
| Jopp Energy Company | Jopp Energy Company |
| 10300 North Lombard Street | 2509 142nd Avenue KP S |
| Portland, Oregon 97203 | Lakebay, Washington 98349 |

**RE:    Notice of Intent to File Suit under the Clean Water Act.**

Dear Managing Agent:

This letter provides Jopp Energy Co. (hereinafter "Jopp") with sixty days' notice of the Northwest Environmental Defense Center's intent to file a citizen lawsuit against it under Section 505 of the Clean Water Act, 33 U.S.C. § 1365, for the Clean Water Act ("CWA") and National Pollutant Discharge Elimination System ("NPDES") permit violations alleged and described in this letter. The Northwest Environmental Defense Center (hereinafter "NEDC") is a non-profit organization dedicated to protecting the natural environment of the Pacific Northwest. Kampmeier & Knutsen, PLLC and NEDC Executive Director Jonah Sandford represent NEDC in this matter. Any response to this notice of intent to sue should be directed to Paul Kampmeier at Kampmeier & Knutsen, PLLC at the address below.

This notice letter pertains to the Jopp facility located at 10300 North Lombard Street, Portland, Oregon 97203 (hereinafter "the Facility"). To limit and control water pollution in Portland, Oregon, the Oregon Department of Environmental Quality (hereinafter "ODEQ") authorized Jopp to discharge pollutants and stormwater associated with industrial activity from the Facility to the Willamette River from June 12, 2019 to June 30, 2021 by granting Jopp coverage under Oregon's 2017 General NPDES Stormwater Discharge Permit No. 1200-Z (Permit Number 126334), which permit ODEQ reissued upon reconsideration on October 23, 2018 (hereinafter "2017 Permit"). ODEQ then authorized Jopp to discharge pollutants and stormwater associated with industrial activity from the Facility to the Willamette River from July 1, 2021 to June 30, 2026 by granting Jopp coverage under Oregon's 2021 General NPDES Stormwater Discharge Permit No. 1200-Z (Permit Number 126334) (hereinafter "2021 Permit"). The 2017 Permit and 2021 Permit (collectively "the Permits") set forth specific requirements Jopp must comply with to protect Oregon's waters and to ensure Jopp's compliance with the federal Clean Water Act at the Facility.

Jopp has violated and continues to violate the terms and conditions of the Permits. NEDC intends to sue Jopp for the alleged violations of the Permits described herein under the Clean Water Act's citizen suit provision, which authorizes citizens to file a federal lawsuit against any person (including a corporation or other business entity) "alleged to be in violation of an effluent standard or limitation" under the Act, which includes "a permit or condition thereof issued under" the Act's NPDES permit program. 33 U.S.C. § 1365(a)(1), (f). All terms and conditions of a state-issued NPDES permit, such as 1200-Z permits, are enforceable via federal court citizen suits. *See, e.g., Nw. Envtl. Advocates v. City of Portland, 56 F.3d 979, 986 (9th Cir. 1995); Or. State Pub. Interest Research Grp., Inc. v. Pac. Coast Seafoods Co., 361 F. Supp. 2d 1232, 1236, 1238 (D. Or. 2005).*

Unless Jopp promptly resolves its violations of the Permits and the Clean Water Act to NEDC's satisfaction, NEDC will file a citizen lawsuit against Jopp in U.S. District Court immediately following the expiration of the required sixty-day notice period that commences with this notice letter. NEDC intends to seek injunctive relief and civil penalties in the amount of up to $64,618 per day for each violation of the CWA. NEDC intends to sue for all violations, including those discovered after the date of this notice letter and those occurring after NEDC files a complaint in court. If Jopp has any information showing that one or more of the violations outlined in this notice did not occur or is stated incorrectly, please provide that information to NEDC immediately, specifying the violation in question.

## I.    BACKGROUND.

Congress enacted the Clean Water Act in 1972 to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). In doing so, Congress declared a national goal of eliminating discharges of pollutants to navigable waters by 1985. Section 301 of the CWA—the heart of the statute—prohibits the discharge of pollutants except, *inter alia*, in accordance with the terms of a NPDES permit issued pursuant to section 402 of the Act. 33 U.S.C. § 1311(a).

The State of Oregon implements a NPDES permit program administered by ODEQ. ODEQ periodically issues a general NPDES permit authorizing discharges of stormwater associated with industrial activity in Oregon. For facilities that obtain coverage under it, ODEQ's current General NPDES Stormwater Discharge Permit Number 1200-Z authorizes discharges of industrial stormwater, provided the discharges are in compliance with the terms and conditions of the permit. Any other direct or indirect discharge to waters of the state is prohibited, and any noncompliance with an NPDES permit "constitutes a violation of…the Clean Water Act…and is grounds for enforcement action…." *See* 2021 Permit Schedules A.14.a and F.A1; 2017 Permit Schedules A.12.a and F.A1.

A central requirement of ODEQ's 1200-Z NPDES permit is that permittees must properly prepare, implement, and keep current a Stormwater Pollution Control Plan ("SWPCP"). There are a number of requirements that must be included in a SWPCP, including a site description, adequate site controls that eliminate or minimize exposure of pollutants to stormwater, and recordkeeping, sampling, and reporting procedures. *See* Schedule A.10 of the 2021 Permit (Sch. A.7 of the 2017 Permit).

2

A SWPCP's effectiveness is then determined by comparing stormwater monitoring results with pollutant benchmarks in the 1200-Z Permit. The benchmarks are numeric concentration levels set for certain pollutants, which provide a standard that determines whether a facility's SWPCP is effectively reducing or eliminating stormwater pollution in compliance with the permit. *See* Sch. A.5 of the 2021 Permit (Sch. A.9 of the 2017 Permit). If a stormwater discharge exceeds an established benchmark, the permittee must investigate the cause of the exceedance, review the SWPCP, and determine what corrective actions must be taken to ensure future compliance with these standards. Visual monitoring for floating solids and oil and grease sheen provides an additional assurance that the SWPCP is effective. *See* Sch. B.12.a.vii of the 2021 Permit (Sch. B.7.a.vii of the 2017 Permit). In no event may anyone, permitted or unpermitted, discharge pollutants in an amount or manner that causes or contributes to a violation of state water quality standards. *See* Sch. A.3.a of the 2021 Permit (Sch. A.4.a of the 2017 Permit); *see also* 33 U.S.C. § 1311.

## II.    JOPP'S NPDES PERMIT VIOLATIONS.

Jopp has violated and is violating the Clean Water Act by discharging pollutants and stormwater associated with industrial activity from its Facility in violation of the terms and conditions of the Permit. Jopp is in ongoing violation of an "effluent standard or limitation" under the Clean Water Act. 33 U.S.C. § 1365(a)(1).

A.    Violations of the Narrative, Technology-Based Effluent Limitations, and the Control Measures Required to Meet Those Effluent Limitations.

Schedule A.1 of the Permits requires Jopp to meet that Permits' listed narrative technology-based effluent limits. Specifically, Jopp must, among other things, "minimize exposure of manufacturing, processing, [and] material storage areas...to rain, snow, snowmelt and runoff" (Schedule A.1.a); employ measures to eliminate or minimize oil and grease contamination of stormwater discharges (Schedule A.1.b); "recycle or properly dispose of wastes to eliminate or minimize exposure of pollutants to stormwater" (Schedule A.1.c); "stabilize exposed areas and contain runoff using structural and nonstructural controls to minimize erosion of soil at the site and sedimentation" (Schedule A.1.d); "employ screens, booms, settling ponds, or other methods to eliminate or minimize waste, garbage and floatable debris in stormwater discharges and ensure that this debris is not discharged to receiving waters" (Schedule A.1.e); "minimize generation of dust and off-site tracking of raw, final or waste materials" (Schedule A.1.f); "routinely clean all exposed areas that may contribute pollutants to stormwater using such measures as sweeping at regular intervals, litter pick-up, keeping materials orderly and labeled, prompt clean- up of spills and leaks, proper maintenance of vehicles and stowing materials in appropriate containers" (Schedule A.1.g); minimize the potential for spills and develop spill prevention and response plans (Schedule A.1.h); regularly inspect, clean, maintain and repair all equipment, systems, areas, and stormwater control measures (Schedule A.1.i); develop and maintain an employee education program on the components and goals of the SWPCP (Schedule A.1.j); and eliminate any non-stormwater discharges not authorized by a NPDES permit.

3

Additionally, Schedule A.2.a of the 2021 Permit (Sch. A.3.a of the 2017 Permit) requires Jopp "to select, design, install, implement and maintain control measures…to meet the narrative and numeric technology based effluent limits in Schedule A.1 and Schedule E…of this permit and [to] describe these measures…in the SWPCP." Schedule A.2.b of the 2021 Permit (Sch. A.3.b of the 2017 Permit) requires Jopp Energy to "…reduce or eliminate pollutants to the extent achievable using control measures that are technologically available and economically practicable and achievable in light of best industry practice."

Jopp violated and continues to violate Schedule A.1, A.2.a, and A.2.b of the 2021 Permit (Sch. A.1, A.3.a, and A.3.b of the 2017 Permit) by failing to meet the narrative technology-based effluent limits in Schedule A.1. of the Permits; by failing to select, design, install, implement, and maintain control measures to ensure compliance with the narrative technology-based effluent limits in Schedules A.1. and Schedules E of the Permits; and by failing to reduce or eliminate pollutants to the extent achievable. These violations have occurred each and every day since June 12, 2019.

1.    *Specific violations documented by agency personnel.*

Portland Bureau of Environmental Services ("BES") staff have documented several specific instances of Jopp's violations of the above permit requirements. During an August 6, 2020 inspection BES staff observed a recycling bin that did not have a lid and was uncovered, and a Diesel Exhaust Fluid tank and additional drums that were not stored within secondary containment. Next, during a December 17, 2021 site visit BES staff observed heavy accumulation of sediment, sawdust, and debris on the pavement coming from overflow stockpiles in Drainage Basin 2, with stormwater then carrying the sediment debris off-site. And during a February 9, 2023 inspection, BES staff observed stockpiles of sawdust extending over the boundary of drainage basin 1, with erosion from those stockpiles running off downslope onto the Port of Portland's property. On the same date, BES staff observed heavy sawdust accumulation on the adjacent Port of Portland road, and at a March 9, 2023 follow-up inspection observed Jopp's woodchipper producing heavy dust particles which were blowing onto the Port of Portland's road and surrounding area.

On each of these days, Jopp was in violation of Schedules A.1, A.2.a, and A.2.b of the 2021 Permit (Sch. A.1, A.3.a, and A.3.b of the 2017 Permit) because on each of these days Jopp failed to comply with the Permit's narrative technology-based effluent limits, which require Jopp to eliminate or minimize exposure of pollutants to stormwater; require Jopp to cover all waste contained in bins or dumpsters; require Jopp to store all hazardous substances and petroleum/oil liquids within berms or other secondary containment devices; require Jopp to minimize generation of dust, off-site tracking and discharge of soil, particulates and raw, final or waste materials; and require Jopp to stabilize exposed areas and contain runoff using structural and nonstructural controls to minimize erosion of soil at the site and sedimentation. Additionally, Jopp violated these same permit requirements each and every other day since June 12, 2019 when Jopp left waste or garbage uncovered; when Jopp failed to store DEF tanks and other drums within secondary containment; when Jopp allowed accumulation of sediment, sawdust, and debris on the pavement at the Facility; when Jopp failed to contain runoff using controls to

4

minimize erosion of soil at the site and sedimentation; or when Jopp failed to minimize generation of dust at the Facility.

> 2.  *Jopp's stormwater discharges regularly exceed numeric benchmarks in the 2017 and 2021 Permits, demonstrating ongoing failures to comply with the Permits.*

Water quality sampling conducted by Jopp at the Facility also demonstrates that Jopp violated Schedules A.1, A.2.a, and A.2.b of the 2021 Permit (A.1, A.3.a, and A.3.b of the 2017 Permit). Schedule A.5.a—b of the 2021 Permit explains that benchmarks are screening concentrations, exceedances of which require the permittee to assess "whether site controls are effectively reducing pollutant concentrations in stormwater discharges." *See also* 2017 Permit Schedule A.9 (benchmarks "are designed to assist the permit registrant in determining whether its site controls are effectively reducing pollutant concentrations in stormwater discharged from the site."). Schedule B.2 of the 2021 Permit requires Jopp to monitor stormwater discharges from the Facility to determine whether the discharges exceed any of the following statewide benchmarks[1]: pH 5.5-9.0 S.U.; total copper 0.015 mg/L; total lead 0.24 mg/L; total zinc 0.24 mg/L; and total suspended solids 30 mg/L.[2] In addition, Jopp discharges to a water body that is not meeting water quality standards for various pollutants, including iron, and Schedule B.4 of the 2021 Permit and ODEQ's permit assignment letters to Jopp require Jopp to monitor stormwater discharges from the Facility to determine whether the discharges exceed the impairment pollutant benchmark for iron of 10.0 mg/L.

As indicated in Tables 1 and 2 below, stormwater discharges from the Facility have repeatedly exceeded the statewide and impairment pollutant benchmarks in the Permits and the Facility's permit assignment letters. The history and pattern of stormwater sample results that exceed a statewide or impairment pollutant benchmark for the Facility demonstrate that Jopp violated its Permits each and every day since June 12, 2019 by failing to comply with the narrative technology-based effluent limits in Schedules A.1 in the Permits, and by failing to select, design, install, implement, and maintain control measures necessary to meet those limits, in violation of Schedule A.2.a of the 2021 Permit (Sch. A.3.a of the 2017 Permit). Further, Jopp's Facility's site controls are not effectively eliminating or minimizing pollutants in stormwater discharged from the Facility, and are not reducing or eliminating pollutants to the extent achievable, in violation of Schedule A.2.b of the 2021 Permit (Sch. A.3.b of the 2017 Permit).

//
//
//
//

---

[1]    The benchmarks that follow are for the Portland Harbor Georegion, where Jopp Energy discharges its stormwater.

[2]    Schedule A.9 of the 2017 Permit established the following statewide benchmarks applicable to Jopp: pH 5.5-9.0 S.U.; total copper 0.020 mg/L; total lead 0.040 mg/L; total zinc 0.12 mg/L; and total suspended solids 30 mg/L.

| Table 1 Benchmark Exceedances Reported by Jopp Energy Co. Under the 2017 1200-Z Permit | | | | | | |
|---|---|---|---|---|---|---|
| Pollutant | Chemical Oxygen Demand | Total Suspended Solids | Copper, Total | Zinc, Total | Aluminum, Total | Iron, Total |
| Permit Benchmarks | 120 mg/L | 30 mg/L | 0.02 mg/L | 0.12 mg/L | .75 mg/L | 1 mg/L |
| 12/11/20 | | 113 | | .122 | .977 | 2.75 |
| 12/20/20 | | 240 | | | | 1.21 |
| 02/01/21 | 124 | 64 | | | | 1.07 |
| 05/27/21 | 200 | 596 | .0336 | | 10.7 | 25.4 |

| Table 2 Benchmark Exceedances Reported by Jopp Energy Co. Under the 2021 1200-Z Permit | | | | | | |
|---|---|---|---|---|---|---|
| Pollutant | Chemical Oxygen Demand | Total Suspended Solids | Copper, Total | Zinc, Total | Aluminum, Total | Iron, Total |
| Permit Benchmarks | 120 mg/L | 30 mg/L | 0.015 mg/L | 0.24 mg/L | 1.10 mg/L | 10 mg/L |
| 12/15/21 | 153 | 302 | .0206 | | 3.31 | |
| 12/30/21 | 255 | 594 | .031 | .281 | 6.4 | 15.5 |
| 03/19/22 | | 128 | | | 1.78 | |
| 04/18/22 | | 102 | | | 2.52 | |
| 06/10/22 | | | .0488 | | | |
| 12/08/22 | | 132 | .0173 | | 6.75 | |
| 12/27/22 | | 129 | | | 4.71 | |

B.    SWPCP Violations.

Schedule A.2.a of the 2021 Permit (Sch. A.3.a of the 2017 Permit) requires Jopp to describe its pollutant control measures, maintenance schedules, and the frequency of housekeeping measures in its SWPCP. Schedule A.8.c of the 2021 Permit (Sch. A.6.c of the 2017 Permit) requires Jopp to include in its SWPCP each narrative technology-based effluent limit to eliminate or reduce the potential to contaminate stormwater and prevent any violation of instream water quality standards. Schedule A.10 of the 2021 Permit (Sch. A.7 of the 2017 Permit) sets forth the requirements for SWPCPs, including in Schedule A.10.b.vi of the 2021 Permit (Sch. A.7.b.vi of the 2017 Permit) the requirement that SWPCPs include a description of control measures installed and implemented to meet the technology and water quality based requirements in Schedules A.1-A.4 and any applicable sector-specific requirements in Schedule E. Schedule A.8.d of the 2021 Permit (Schedule A.6.d of the 2017 Permit) then requires Jopp to implement the SWPCP and any revisions to it.

BES staff has documented several instances where Jopp has failed to implement its SWPCP in violation of Schedule A.8.d of the 2021 Permit (Sch. A.6.d of the 2017 Permit.

6

During a site visit on August 6, 2020, BES staff observed several failures to implement specific site controls described in the April 2019 version of the Facility's SWPCP, including:

- The April 2019 SWPCP stated that employee education would occur no later than within 30 days of hiring an employee, and annually for all SWPCP-trained personnel. Jopp was unable to provide documents to indicate the completion of employee education.
- The April 2019 SWPCP included a description of site changes that were to be made in order to re-route sheet flow from discharging to the neighboring property by installing a berm and stormwater sump with a detention tank and stormwater discharge point, as well as the plugging of Catch Basin 1. This work had not been completed by the August 6, 2020 site visit.
- The April 2019 SWPCP stated that metal recycling bins at the Facility are covered. During the August 6, 2020 inspection a recycling bin did not have a lid and was uncovered.
- The April 2019 SWPCP site map described drainage basin 2 (DB-2) as non-industrial. During the inspection, metal recycling bins were located in DB-2, as opposed to DB-1, as described in the SWPCP.
- The April 2019 SWPCP stated that the diesel fueling and DEF dispenser tank were contained. During the inspection, the DEF tank and additional drums were not stored with secondary containment.

BES staff identified additional violations of Schedule A.8.d of the 2021 Permit (Sch. A.6.d of the 2017 Permit) during a December 17, 2022 site visit and follow-up inspection on January 26, 2022. First, BES staff again noted that Jopp failed to provide records to document the completion of employee education, and Jopp acknowledged that employee education had not occurred in accordance with the SWPCP. Next, although the November 2021 version of Jopp's SWPCP describes drainage basin 5 (DB-5) as non-industrial, on December 17, 2021 BES staff observed DB-5 being used for overflow stockpiles of ground pallets. Then, during the January 26, 2022 follow-up inspection BES staff observed storage of railroad material in DB-5. Each of these failures to implement control measures or practices described in the SWPCP is a violation of Schedule A.8.d of the 2021 Permit (Sch. A.6.d of the 2017 Permit).

In addition, Jopp violated Schedules A.2.a, A.8.c, A.10, and A.8.d of the 2021 Permit (Sch. A.3.a, A.6.c, A.7, and A.6.d of the 2017 Permit) each and every day since June 12, 2019 by failing to maintain and implement an adequate SWPCP at the Facility. The extensive benchmark exceedances listed in Tables 1 and 2, the extensive water quality violations and corrective action violations described herein, and ongoing discharges of polluted industrial stormwater from the Facility demonstrate that Jopp is not maintaining or implementing a SWPCP that includes adequate control measures and all of the required SWPCP components.

Finally, Jopp has violated Schedule A.2.f of the 2021 Permit, which states:

If modifications to the control measures are necessary to meet the technology-based effluent limits in this permit, the permit registrant must implement the modification

before the next storm event if practicable or no later than 30 calendar days from discovering the violation, unless DEQ or agent approve a later date.

*See also* 2017 Permit Sch. A.3.f. A review of Jopp's permit files with BES shows that Jopp has violated and is violating Schedule A.2.f of the 2021 Permit (Sch. A.3.f of the 2017 Permit) by failing to take sufficient corrective actions, including revision of its SWPCP and implementation of modified control measures, even though such corrective actions are necessary to meet the effluent limits in the Permits. These violations have occurred each and every day since June 12, 2019.

C.    Tier 1 Corrective Action Violations.

Schedule A.11 of the 2021 Permit (Sch. A.10.a and B.7.f.vi of the 2017 Permit) requires Jopp to undertake a Tier I corrective action response each time a stormwater monitoring result exceeds any statewide or sector-specific benchmark, or when visual observations show signs of pollution in the discharge. Specifically, that permit condition requires Jopp, within 30 days of obtaining monitoring results demonstrating a benchmark exceedance or completing a monthly visual inspection showing signs of pollution in the discharge, to: (1) investigate the cause of the elevated pollutant levels and develop a plan for controlling significant materials from previous operations; (2) review the SWPCP and evaluate the selection, design, installation and implementation of control measures to ensure compliance with the permit, including evaluating whether any previous pollutant source isolation actions are complete and whether additional modifications are necessary; (3) evaluate treatment measures, infiltration devices and mass reduction measures to see if they were properly installed, maintained and implemented and whether maintenance, correction or modifications are necessary; and (4) assess and implement these corrective actions at all substantially similar discharge points. Per Schedule A.11.c.v of the 2021 Permit (Sch. A.10.a.iv of the 2017 Permit), a Tier I report must include (1) the results of its investigation into the cause of elevated pollutant levels; (2) corrective actions taken or to be taken, or, if determined that no corrective action is necessary, the basis for this determination; and (3) documentation of whether SWPCP revisions are necessary. Schedule A.11.d.i of the 2021 Permit (Sch. A.10.b of the 2017 Permit) then requires Jopp to implement necessary corrective actions before the next storm event, if possible, or no later than 30 days after receiving the monitoring results, whichever comes first.

Jopp has routinely violated Schedules A.11.c and A.11.d of the 2021 Permit (Sch. A.10.a.iv and A.10.b of the 2017 Permit) by failing to prepare and submit an adequate Tier I corrective action report, and by failing to perform an adequate corrective action response to bring the facility into compliance with benchmark standards. Jopp has failed to complete Tier I corrective action responses and reports in response to benchmark exceedances or visual observations showing signs of pollution. Jopp did not complete a Tier I corrective action response and Tier I report within 30 days following receipt of laboratory results for samples collected on December 11, 2020, December 30, 2020, February 1, 2021, May 27, 2021 and December 15, 2021, despite multiple benchmark exceedances on each of these dates. Each of these instances was a violation of Schedule A.10.a and A.10.b of the 2017 Permit (Sch. A.11.c and A.11.d of the 2021 Permit).

8

D.    Violations of Inspection Requirements.

Schedule B.12 of the 2021 Permit (Sch. B.7.a. of the 2017 Permit) requires Jopp to perform monthly inspections of "areas where industrial materials or activities are exposed to stormwater and areas where stormwater control measures, structures, catch basins, and treatment facilities are located." These inspections must include "visual observation for the presence of floating and suspended solids, color, odor, foam, visible oil sheen, or other obvious indicators of pollution in the stormwater discharge at all discharge point(s)...." When these observations show evidence of such stormwater pollution, Jopp must complete a Tier I corrective action report. Per Schedule B.12.c of the 2021 Permit (2017 Permit Sch. B.7.c), these visual observations "must be conducted during a discharge event if one occurs during the month, regardless whether the monthly site inspection has already occurred." Inspections must include all discharge points. And Schedule B.12.i of the 2021 Permit and Schedule B.7.f. of the 2017 Permit require Jopp to document all inspections in an inspection report that includes certain specific information and that is retained on site and submitted to ODEQ or BES upon request.

Jopp has routinely violated these inspection requirements. Records available to NEDC indicate that Jopp failed to perform any required monthly inspections through at least April 2022, and failed to document any inspections in an inspection report. As a result, Jopp violated Schedule B.12 of the 2021 Permit (Sch. B.7 of the 2017 Permit) each month from June 2019 through March 2022, and every other month where it failed to perform the required inspections and document those inspections in an inspection report. In addition, Jopp violated Schedule B.12 of the 2021 Permit in June 2022, September 2022, December 2022, and January 2023, because in each of those months Jopp conducted visual observations on days when there was no discharge occurring, in violation of Schedule B.12.c of the 2021 Permit.

E.    Violations of Recordkeeping Requirements.

Schedule B.16 of the 2021 Permit (Sch. B.10 of the 2017 Permit) requires that Jopp record and maintain certain information at the Facility, including per Schedule B.16.d of the 2021 Permit (Sch. B.10 of the 2017 Permit) documentation of maintenance and repairs of control measures and treatment systems and per Schedule B.16.g of the 2021 Permit (Sch. B.10.f of the 2017 Permit) all inspection reports.

During a stormwater inspection on August 6, 2020 BES staff noted that the facility failed to record and maintain stormwater records onsite, including records of preventative maintenance, housekeeping, facility inspection, stormwater sampling results, and employee education records, a violation of Sch.B.10.d of the 2017 Permit. Similarly, during an inspection on January 26, 2022, BES noted that the facility again failed to record and maintain stormwater records onsite, including logs of preventative maintenance, housekeeping, facility inspection, and employee education, a violation of Sch.B.16 of the 2021 Permit. Jopp has violated Sch.B.12 and Sch.B.16 of the 2021 Permit (Sch.B.7 and Sch.B.10 of the 2017 Permit) on each of these BES inspection dates, and each and every other day in which the documentation of employee education, maintenance and repairs of control measures and treatment systems, or visual observations were not retained at the Facility and available upon request.

9

F.     Violations of Water Quality Based Effluent Limitations and Related Reporting
       Requirements.

       Jopp violated the Permits and the Clean Water Act by discharging pollutants and
stormwater associated with industrial activity in an amount or manner that causes or contributes
to violations of the instream water quality standards established in Oregon Administrative Rule
("OAR") 340-041 for the Portland Harbor, in violation of Schedules A.3 and F.A6 of the 2021
Permit (Sch. A.4.a and F.A6 of the 2017 Permit). Schedule A.3.a of the 2021 Permit (Sch. A.4.a
of the 2017 Permit) prohibits Jopp from causing or contributing to a violation of instream water
quality standards as established in Oregon Administrative Rules 340-041. And Schedules F.A6
of the Permits require Jopp to comply with any applicable effluent standards or prohibitions
established under OAR 340-041-0033 for toxic pollutants.

       OAR 340-041-007(1) states that "the highest and best practicable treatment and/or
control of wastes, activities, and flows must in every case be provided so as to maintain…toxic
materials…at the lowest possible levels." OAR 340-041-0033(1) prohibits the introduction of
toxic substances above natural background levels in concentrations and/or combinations that
may be harmful to public health, safety, aquatic life, and wildlife. And OAR 340-041-0033(2)
states that levels of toxic substances in waters of the state may not exceed the applicable aquatic
life criteria as defined in Table 30 under OAR 340-041-0083. ODEQ established these and other
water quality standards to protect human health and other important beneficial uses such as
recreation, drinking water sources, and habitat for salmon and steelhead and other aquatic life.
Or. Rev. Stat. §§ 468B.015, 468B.048.

       The Permits established benchmark concentrations for various pollutants based on these
water quality standards. Table 30 in OAR 340-041-8033 identifies the concentrations of toxic
pollutants that may be harmful to aquatic life. In the Permits and in its permit assignment letters
to Jopp, ODEQ incorporated the iron criterion in Table 30 as the impairment benchmark
concentration for iron, and used the copper, lead, zinc, and aluminum criteria to establish
benchmarks for those pollutants.

       Jopp has violated and continues to violate Schedules A.3.a and F.A6 of the 2021 Permit
(Sch. A.4.a and F.A6 of the 2017 Permit) by discharging toxic pollutants from the Facility in
amounts or manners that cause or contribute to violations of the narrative and numeric water
quality standards identified above. As indicated in Tables 1 and 2 above, discharges from the
Facility routinely contain iron, copper, zinc, and aluminum in concentrations that exceed relevant
benchmark concentrations. As a result, Jopp has violated and is violating Schedule F.A6 by
introducing iron, copper, zinc, and aluminum above natural background levels in concentrations
that may be harmful to public health, safety, aquatic life, and wildlife (OAR 340-041-0033(1).
These violations have occurred each and every day since June 12, 2019 on which there was 0.1
inch or more of precipitation at the Facility because, on information and belief, on those days
Jopp discharged industrial stormwater from the Facility that contained copper, zinc, iron, and/or
aluminum in excess of the benchmark concentrations for those pollutants established in the
Permits. Specific examples of these violations occurred on each of the following days when Jopp
collected a sample of its discharge that exceeded one or more of the 2021 Permit's benchmarks

for toxic pollutants: December 15, 2021, December 30, 2021, March 19, 2022, April 18, 2022, June 10, 2022, December 8, 2022, and December 27, 2022. These violations are ongoing.

In addition, Jopp has violated and is violating Schedule F.A6 by failing to provide the highest and best practicable treatment and/or control of wastes, activities, and flows so as to maintain the lowest possible levels of toxic pollutants, as demonstrated by the routine elevated discharge concentrations of toxic pollutants copper, zinc, iron, and aluminum in Tables 1 and 2 above. These violations have occurred each and every day since June 12, 2019 on which there was 0.1 inch or more of precipitation at the Facility because, on information and belief, on those days Jopp discharged industrial stormwater from the Facility that contained copper, zinc, aluminum, and/or iron in excess of the benchmarks for those pollutants established in the Permits. Specific examples of these violations occurred on each of the following days when Jopp collected a sample of its discharge that exceeded one or more of the 2021 Permit's benchmarks for one or more toxic pollutants: December 15, 2021, December 30, 2021, March 19, 2022, April 18, 2022, June 10, 2022, December 8, 2022, and December 27, 2022. These violations are ongoing.

Finally, Jopp violated Schedule A.3.b of the 2021 Permit (Sch. A.4.b of the 2017 Permit) by failing to comply with the investigation, reporting, and corrective action requirements in those permit conditions. Schedule A.3.b of the 2021 Permit (Sch. A.4.b of the 2017 Permit) requires Jopp to take certain actions upon becoming aware that a discharge from the Facility caused or contributed to an exceedance of water quality standards, including: investigating the conditions that triggered the violation; reviewing the SWPCP to ensure compliance with the permit; submitting a Water Quality Standards Corrective Action report within thirty days of receiving the relevant monitoring data, which report must meet certain criteria stated in the Permits; and implementing any required corrective actions before the next storm event or within thirty days after discovering the violation, whichever comes first. As explained above, Jopp has routinely caused or contributed to an exceedance of numeric and narrative water quality standards for several toxic pollutants. On each of these instances, Jopp has violated Schedule A.3.b of the 2021 Permit (Sch. A.4.b of the 2017 Permit) by failing to comply with the investigation, reporting, and corrective action requirements in those permit conditions. Jopp violated these requirements each and every day since June 12, 2019 by failing to investigate the conditions triggering water quality standards violations; failing to review the SWPCP to ensure compliance with the applicable permit; failing to submit each and every required Water Quality Standards Corrective Action report within thirty days of receiving the relevant monitoring data; and failing to implement required corrective actions before the next storm event or within thirty days after discovering the violation, whichever comes first.

G.    Violations of Monitoring and Reporting Requirements.

Jopp has violated the monitoring requirements in Schedule B of the Permits. Schedule B.2 of the 2021 Permit (Sch. B.1.a of the 2017 Permit) states that the permit registrant must monitor stormwater discharges for various statewide benchmarks, including pH, total copper, total lead, total zinc, and total suspended solids. Schedule B.4 of the 2021 Permit states that the permit registrant must "monitor for…total iron at all discharge points into impaired receiving waters that correspond with the specific pollutant for which the water body is impaired." *See also*

2017 Permit Sch. B.1.b. Schedule B.5 of the 2021 Permit states that the permit registrant must "monitor for fecal coliform and enterococcus at all discharge points that correspond to the specific pollutant for which the water is impaired." Schedule B.6 of the 2021 Permit (Sch. B.1.b of the 2017 Permit) emphasizes that "[t]he permit registrant must monitor for: the applicable statewide benchmark pollutants identified in [Table 4 of the] permit" along with applicable impairment pollutants. Schedule B.7.f and Table 6 of the 2021 Permit (Sch. B.2.f and Table 5 of the 2017 Permit) requires Jopp to monitor stormwater discharges for the above-mentioned pollutants "Four times per year, two samples between January 1 and June 30, and two samples between July 1 and December 31."

Jopp violated the monitoring requirements in Schedule B of the Permits. After being issued the 1200-Z permit in June 2019, Jopp did not submit DMRs during the 2019-2020 Permit year, as required by Sch.B.8 of the 2017 Permit. Records made available to NEDC indicate that 0 of the 4 required samples were taken for benchmark parameters, 0 out of 4 samples were taken for sector-specific parameters required by Schedule E of the permit, and 0 of 4 samples were taken for impairment pollutants. This failure to monitor for applicable statewide benchmarks and applicable impairment pollutants is a violation of Schedules B.1.a, B.1.b, and B.2.f of the 2017 Permit.

Jopp has also failed to monitor each required discharge point, in violation of Schedule B.7.c of the 2021 Permit (Sch. B.2.c of the 2017 Permit). Those permit conditions require Jopp to monitor each discharge point, unless a discharge point serves an area without exposure of stormwater to industrial activities, or if that discharge point has effluent that is substantially similar to the effluent of a monitored discharge point. At the August 6, 2020 inspection, BES staff noted that the Facility's Drainage Basin 2 (DB-2) was designated "non-industrial" on Jopp's SWPCP and was not being sampled. However, during the inspection an uncovered metal recycling bin—an industrial activity—was located in that area. Similarly, at the January 26, 2022 inspection, BES staff noted that the Facility's SWPCP designated Drainage Basin 3 (DB-3) as substantially similar to Drainage Basin 1 (DB-1), and thus discharge from DB-3 was not being sampled. However, during the inspection DB-3 was being used as a boneyard for old railroad equipment, meaning materials were present in DB-3 that were not present in DB-1 and DB-3 was not substantially similar to DB-1. Jopp violated the monitoring requirements in Schedule B.7.c of the 2021 Permit (Sch. B.2.c of the 2017 Permit) on each of these instances, and every other instance where it failed to perform monitoring of discharge from a drainage basin that included exposure of stormwater to industrial activity that was not substantially similar to an industrial area with a monitored discharge point.

H.    Violations for Failing to Prepare and Submit Noncompliance Reports.

Jopp violated Schedules F.D6 of the Permits each and every day since June 12, 2019 by failing to report its noncompliance with the Permits, as required by those permit conditions. Schedules F.D6 of the Permits require Jopp to report all instances of noncompliance with the permit not reported under General Condition D4 or D5 at the time Jopp submits monitoring reports. Each noncompliance report must include: (1) a description of the noncompliance and its cause; (2) the period of noncompliance, including exact dates and times; (3) the estimated time the noncompliance is expected to continue if it has not been corrected; and (4) the steps taken or

planned to reduce, eliminate, and prevent reoccurrence of the noncompliance. As described in this letter, Jopp has violated the Permits each and every day since June 12, 2019. Jopp also therefore violated Schedules F.D6 of the Permits each and every day since June 12, 2019 by failing to prepare and submit noncompliance reports that fully and accurately identify Jopp's noncompliance with the Permits and that include all the required information.

I.    Violations of General Conditions.

Each and every permit violation described herein is also a violation of Schedules F.A1 of the Permits, which require Jopp to comply with all conditions of its Permits. Additionally, each and every permit violation described herein is a violation of Schedules F.A3 of the Permits, which require Jopp to take all reasonable steps to minimize or prevent any discharge in violation of the Permits. Jopp violated these permit conditions each and every day since June 12, 2019 by violating the Permits and by failing to take reasonable steps to minimize or prevent discharges in violation of the Permits.

Each and every Permit violation described herein is also a violation of Schedules F.B1 of the Permits, which require Jopp to "at all times properly operate and maintain all facilities and systems of treatment and control (and related appurtenances) that are installed or used by the permittee to achieve compliance with the conditions" of the Permits. Jopp violated these permit conditions each and every day since June 12, 2019 by failing to properly operate and maintain all systems of treatment and control, including Jopp's SWPCP, to achieve compliance with the Permits.

### III.    PERSONS GIVING NOTICE.

The full name, address, and telephone number of the party giving notice is:

Northwest Environmental Defense Center
10101 S. Terwilliger Blvd.
Portland, Oregon 97219
Telephone: (503) 768-6726

### IV.    ATTORNEYS REPRESENTING NEDC.

The attorneys representing Northwest Environmental Defense Center in this matter are:

Paul Kampmeier
Kampmeier & Knutsen, PLLC
705 Second Avenue, Suite 901
Seattle, Washington 98104
Telephone: (206) 858-6983

Jonah Sandford
Northwest Environmental Defense Center
10101 S. Terwilliger Blvd.
Portland, OR 97219
Telephone: (503) 768-6726

Brian Knutsen
Kampmeier & Knutsen, PLLC
1300 SE Stark Street, Suite 202

Portland, Oregon 97214
Telephone: (503) 841-6515

## V.    CONCLUSION.

All of the NPDES permit and Clean Water Act violations alleged and described in this notice of intent to sue are ongoing. At the conclusion of the 60-day notice period, NEDC intends to file a lawsuit against Jopp under the citizen suit provisions of Section 505 of the Clean Water Act, 33 U.S.C. § 1365. Each of the above-described violations subjects Jopp to civil penalties of up to $64,618 per day. See 40 CFR § 19.4. In addition to civil penalties, NEDC will seek injunctive relief to prevent further violations of the CWA and such other relief as is permitted by law, including recovery of NEDC's costs, attorneys' fees, expert witness fees, and other litigation costs. See 33 U.S.C. §§ 1365(a) and (d). Although the above-described violations reflect the information currently available to NEDC, NEDC intends to sue for all violations, including those yet to be uncovered and those committed after the date of this notice letter.

During the 60-day notice period NEDC will be willing to discuss effective remedies for the violations described in this letter. If you wish to pursue settlement discussions in the absence of litigation, we suggest that you initiate discussions within 10 days of receiving this notice so the parties can meet and discuss effective remedies for the violations alleged herein. NEDC does not intend to delay the filing of a complaint if discussions are ongoing when the notice period ends.

Kampmeier & Knutsen PLLC                    Northwest Environmental Defense Center

By:_____                By:_____
    Paul Kampmeier                              Jonah Sandford

*Attorneys for Northwest Environmental Defense Center*

cc:    Michael S. Regan, Administrator, U.S. Environmental Protection Agency
       Casey Sixkiller, Region 10 Administrator, U.S. Environmental Protection Agency
       Director Leah Feldon, Oregon Department of Environmental Quality
       Janna Diane Jopp, Registered Agent for Jopp Energy Company

14

## CERTIFICATE OF SERVICE

I, Mariah Harrod, declare under penalty of perjury of the laws of Oregon and the United States that I am an attorney at Kampmeier & Knutsen, PLLC and that on June 12, 2023, I caused copies of the foregoing Notice of Intent to Sue Under the Clean Water Act to be served on the following by depositing them with the United States Postal Service, certified mail, return receipt requested, postage prepaid:

Managing Agent
Jopp Energy Company
P.O. Box 170
Vaughn, Washington 98394

Managing Agent
Jopp Energy Company
11901 137th Avenue Northwest #E1
Gig Harbor, Washington 98329

Janna Diane Jopp, Registered Agent
Jopp Energy Company
P.O. Box 170
Vaughn, Washington 98394

Janna Diane Jopp, Registered Agent
Jopp Energy Company
11901 137th Avenue Northwest #E1
Gig Harbor, Washington 98329

Executed this 14th day of July, 2023, at Seattle, Washington.

Mariah Harrod, WSBA No. 60585

Exhibit 3

| Plaintiff / Petitioner:<br>NORTHWEST ENVIRONMENTAL DEFENSE CENTER | Case No: |
|---|---|
| Defendant / Respondent:<br>JOPP ENERGY COMPANY | DECLARATION OF SERVICE |

The undersigned, being first duly sworn on oath deposes and says: That he/she is now and at all times herein mentioned was a citizen of the United States, over the age of eighteen years, not a party to or interested in the above entitled action and competent to be a witness therein.

That on Mon, Jun 05 2023 at 11:39 AM, at the address of 10300 N Lombard St, within Portland, OR, the undersigned duly served the following document(s): Notice of Intent to File Suit under the Clean Water Act in the above entitled action upon Managing Agent / Jopp Energy Company , by then and there, personally delivering 1 true and correct copy of the above documents into the hands of and leaving same with Zach Pollard, Managing Agent.

**I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct:**

**Date:**   June 6th, 2023
           Job No. 8973259

Spencer Morris
Tooth and Nail

# Exhibit 4

8973249

## HALO MESSENGERS
(206) 300-9564
HALOMESSENGERS.COM

halomessengers@yahoo.com



72

| LAST DAY Date/Time | Firm Name Kampmeier & Knutsen PLLC | | Phone 203-739-5184 | Attorney Mariah Harrod | |
|---|---|---|---|---|---|
| 6/8/2023 | Address 811 1st Ave #468 Seattle WA 98104 | | | | Legal Assistant |
| | Case: NW Environmental Defense Center v. Jopp Energy Co. | | | | |
| | Cause No.: | | Client Matter Number | Date. | |

☐Signature Required On Documents    ☐Return Conformed Slip Only    Return Conformed Copy    ☐Conform Original Do Not File

Other Instructions                                    Please MS

Managing Agent
Jopp Energy Company
2509 142nd Ave KP S
Lakebay WA 98349

| FILING | County | Superior Court | District Court (Indicate District) | Auditor | Appeals Court I-Sea    II-Tac | | Federal Court Civil    Bnkrpt | | Sea | Tac | State Supreme | Sec State |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | |

6·5·23 @ 4:20 PM: NADA through sliding glass door open
No response to yelling.

Ⓧ 6·7·23 @ 6:38 PM: Served Teresa Newman, only
person @ the property

| Plaintiff / Petitioner:<br>NORTHWEST ENVIRONMENTAL DEFENSE CENTER | Case No: |
|---|---|
| Defendant / Respondent:<br>JOPP ENERGY COMPANY | **DECLARATION OF SERVICE** |

The undersigned, being first duly sworn on oath deposes and says: That he/she is now and at all times herein mentioned was a citizen of the United States, over the age of eighteen years, not a party to or interested in the above entitled action and competent to be a witness therein.

That on Wed, Jun 07 2023 at 06:38 PM, at the address of 2509 142nd Ave SW, within Lakebay, WA, the undersigned duly served the following document(s): Notice of Intent to File Suit under the Clean Water Act in the above entitled action upon Managing Agent / Jopp Energy Company , by then and there, personally delivering 1 true and correct copy of the above documents into the hands of and leaving same with Teresa Neuman, Managing Agent.

**I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct:**

**Date:**    June 8th, 2023
Job No. 8973249

Richard Newland
Halo Messenger Services, LLC
1522 Western Ave
Seattle, WA 98101
206-300-9564